MICHAEL O. CUNNINGHAM *v.* CIVIL SERVICE
COMMISSION, COUNTY OF HAWAII.

No. 4400.

DECEMBER 29, 1964.

TSUKIYAMA, C. J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

*Per Curiam.* This is an appeal from a judgment of the
Third Circuit Court upholding a ruling of the Hawaii
County Civil Service Commission sustaining the action of
the manager of the county's water board demoting appel-
lant for insubordination.[1]

The facts of the case were undisputedly established
before the Civil Service Commission. As far as pertinent
they are related hereunder.

On or about April 24, 1963, Mrs. Hale, chairman of
the Hawaii County Board of Supervisors, sent the water

---

[1] Section 3-25, R.L.H. 1955, as amended, provides: "The findings and
decisions of the commission shall be final on all such appeals [from
order of dismissal or demotion], provided that this shall not prevent
appeals to the appropriate circuit court upon the ground that the deter-
mination made by the commission was made in manifest abuse of its
discretion, was arbitrary and capricious or was clearly contrary to the
evidence." A review before a circuit court on appeal from a decision of
a civil service commission is on the record. Section 6C-14(f), R.L.H.
1955 (as enacted by Act 103, S.L. 1961).

board's manager, William Y. Thompson, a note relating that Samuel Kawahara had reported to her, "a Water Board employee who drives C of H truck No. 331 has been seen sleeping in the truck on the old Honolii Pali Road area."

Thompson ascertained that the truck was under control of appellant as head meter reader and that on April 23, the day in question, appellant had been assigned to work in the Waiakea Homestead area. Under department regulation or practice he was not supposed to leave his assigned area without permission.

On the afternoon of May 1, Thompson called appellant into his office, showed him the note (with the informant's name removed from it), and asked him if he had gone to the Honolii Pali Road area on the day in question. Appellant refused to answer. He stated he should be confronted with his accuser, and further, that he wanted to have counsel and an opportunity to check his records. The manager acquiesced and directed the appellant to return the following morning. As directed, the appellant appeared before the manager on May 2, with his agent, Jackson Ah Chin. A pertinent portion of Thompson's testimony respecting the ensuing discussion is as follows:

"Then I again, I directed my remarks to the U.P.W. business agent. I showed him the complaint. I said this has been brought to my attention, I have to make a reply. I thought this was a very simple matter so I explained to him that I called Cunningham in yesterday, he wanted to check his records, he wanted his business agent present. Fine, now, we're ready. Then I asked Mr. Cunningham did this car 331 that was seen in Honolii Pali, was the car there that day? Then U.P.W. business agent started off by saying that I shouldn't listen to stool pigeons and I think Mr. Cunningham added, I should back up the employees. Some

of the other things that was brought up that maybe somebody had it in for Mr. Cunningham and things of that nature. Then, I told the boys that I'm ready to back up the employees at all times, however, this was a file that came from the County Chairman's Office, the Chairman's entitled to certain respect and I'm going to provide her with a satisfactory reply and at this time Mr. Ogi mentioned to Mr. Cunningham that if the Manager-Engineer is supposed to back up the employees, he needs the fact to back up the employee and that is what the Manager is trying to get today. And this discussion continued on and then I think I narrowed it down again to this specific question. I'd like to know whether the car had gone over to Honolii with Mr. Cunningham, had taken the car to Honolii Pali. He mentioned that he had worked in the Homesteads area. I said I don't deny that. That's what the record show that is what he was supposed to have been doing, however, the car had been reported out at the Honolii Pali area and I wanted to know whether or not this was true. I asked him whether he had gone to the Honolii Pali area. He refused to answer. Then I said, well you'll get my decision tomorrow and what action I'm going to take. Then he threw an appeal, prepared appeal on the table and said that this is my appeal. Then we had a short discussion and then I said I'll investigate the appeal and that concluded the meeting."

Thompson's testimony in the above respect was fully substantiated by Takeshi Ogi and George Ah Sing, two employees of the water board.

The document which appellant threw on the table was a form grievance appeal. As filled out by appellant on May 2, and by the water board manager on May 7, it is as follows:

"APPEAL TO DEPARTMENT HEAD

Date: May 2, 1963.

FROM: Michael O. Cunningham BWS Leadman Meter Readers

TO: Mgr. Engr. Mr. William Y. Thompson BWS.

Request your consideration and decision of my grievance because: (The subsequent complaint is false and malicious to my good character and reputation.)

In the Board of Water Supply office at Shipman St. Hilo, on May 1, 1963, about 3:00 pm. Mgr. Engineer Mr. William Y. Thompson summoned me in the presence of Mr. Ah Sing, and Mr. Ogi Meter Reader's Supervisors and Mr. Thompson stated that he has received a typewritten complaint from the Hilo County Chairman's office reporting that Michael Cunningham was sleeping at Honolii Hilo, Hawaii on April 23, 1963, during working hours. Mr. Thompson gave me the type-written complaint to read same.

On or about April 23, 1963, I was working in the Hilo Homesteads area. FORTHWITH I'M REQUESTING THAT I BE HEARD AND THAT I BE CONFRONTED WITH THE WITNESSES AGAINST ME.

(S) Michael O. Cunningham

Michael O. Cunningham BWS Lead-man Meter Readers."

"DEPARTMENT HEAD TO EMPLOYEE

DECISION: No action is taken at this time.

COMMENTS: This appeal under the Uniform Grievance Procedure for Employees is not valid. Grievance under Civil Service regulations means dissatisfaction from the employee's belief that he has been treated unfairly or disagreement with his supervisors as to

the application of a policy. I do not see where you have been treated unfairly or where a policy has been applied to you with which you disagree. You were asked a question regarding your work which you failed to answer satisfactorily. *The answer which was requested of you is contained in this appeal.* We are now investigating this matter. Upon completion of the investigation by the proper officials, the Manager-Engineer will take the required action as warranted. You will be so notified at said time. (Appellant's emphasis.)

Date May 7, 1963

(S) W. Y. Thompson

W. Y. Thompson
Manager-Engineer"

On May 21, the water board manager demoted appellant and notified him of the action by a letter, admitted in evidence, reading as follows:

"May 21, 1963

Mr. Michael O. Cunningham
P. O. Box 177
Hilo, Hawaii

Dear Michael:

A complaint was received recently from the Chairman's office regarding Board of Water Supply vehicle No. 331 seen parked along the old Honolii Pali Road. Someone was seen resting in the car.

Since this vehicle is used by the meter readers, you were called in to explain the presence of the car along the old Honolii Pali Road. Your work schedule for that day showed that you were supposed to be working in the Waiakea Homesteads area. You were called in to explain this matter. You were asked whether or

not you had left your work site and had gone to the Honolii Pali area. You refused to provide a satisfactory answer to the Manager-Engineer. In addition, you filed a claim for grievance in which you stated that you were working in the Waiakea Homesteads area. In view of the foregoing, namely, your refusal to provide a satisfactory answer to the Manager-Engineer regarding your work, disciplinary action will be taken against you as set forth under Rule 12, Section 12.2, item 8, of the Civil Service Rules and Regulations. I would like to add that subsequent investigation indicates that the Board of Water Supply vehicle which was assigned to you that day was seen parked along the Honolii Pali Road about 1:20 p.m. on April 23, 1963, when you was supposed to have been in the Waiakea Homesteads area.

Needless to say, I am quite disturbed about this matter. At this time, for the best interest of the Board of Water Supply, you are removed from your position as Meter Reader II and directed to report to our Field Superintendent, Emil Osorio, for a new assignment as a field handyman beginning 7:00 a.m. June 4, 1963. The details regarding your new assignment will be worked out with the Civil Service Commission. Your continued employment with the Board of Water Supply will depend upon your performance in your new assignment.

Very truly yours,<br>
(S) W. Y. Thompson

W. Y. Thompson<br>
Manager-Engineer

cc: Civil Service Commission
    Mr. Jackson Ah Chin, Business Agent, UPW
    Mr. Emil Osorio"

The appellant did not testify at the hearing before the Civil Service Commission. He called only Mrs. Hale, who testified generally about the receipt of the complaint from Kawahara, and David Paea, a water board employee, who testified that appellant customarily wore pants like a "jean." This latter testimony was apparently elicited for comparison with testimony brought out from Kawahara that the individual he saw sprawled out on the front seat of the truck at the Honolii Pali Road area at 1:20 p.m. on April 23 had on light tan trousers. The purpose of this testimony undoubtedly was to refute any implication that the individual seen sleeping in the truck was appellant. However, it is obvious that no such charge was made against appellant and that his superior's questioning did not infer such.

Appellant's helper on April 23, Mr. Ito, was not called as a witness at the Civil Service hearing. It was explained that he had returned to the mainland to attend school.

The commission found and held that the written grievance appeal did not constitute an adequate response to the manager's inquiry and that the evidence showed no justifiable excuse for appellant's refusal to answer Mr. Thompson's inquiry of whether or not he (appellant) had been at Honolii Pali on April 23, 1963. The commission's ultimate conclusion was:

"The question asked of appellant by the Manager-Engineer, relating to appellant's work, was a legitimate subject of inquiry to which the Manager-Engineer was entitled to a direct and forthright answer. Appellant refused [sic] to answer, without legally justifiable cause, constituted insubordination within the meaning of Civil Service Commission Rule 12.2, item 8, and constituted sufficient ground for invoking the disciplinary action in question."

Appellant's basic contention in seeking reversal is summarized in the opening brief, as follows:

"* * * [T]he facts are undisputed and the evidence is clear that prior to the decision to suspend [sic] him and immediately after the question had been asked him orally, he in writing answered the question asked him and that the Manager-Engineer in writing conceded that his written appeal did answer the question put to him. The Commission, therefore, erred as a matter of fact in holding that the appellant had not answered the question to him."

We find the contention without merit.

It is clear that in view of the nature of the complaint relayed from the chairman of the board of supervisors, the manager of the water board was obligated to follow through on it. When he ascertained that the truck involved should have been in the Waiakea area there was an additional and more pressing need for pursuing the inquiry. On May 1 he preliminarily endeavored to ascertain whether the appellant was in the Honolii Pali area on April 23, and no more. The scope of inquiry was very limited and appellant should have been able to respond to it with a simple "yes" or "no" answer. Notwithstanding the refusal to answer, the manager allowed the appellant further time. At the second hearing, on May 2, appellant again refused to answer whether he or the truck was in the Honolii Pali area on the day in question.

In our opinion appellant's declining to orally answer the question asked him on May 2 was an unjustified refusal to submit to a legitimate inquiry by proper authority and constituted flagrant defiance of a superior officer. The appellant's obstinate and evasive stand was incompatible with his duties and obligations to his employer. Under any true concept of the term, it constituted insub-

ordination.[2] Appellant's dereliction fully meets the test for determining insubordination laid down (at p. 701) in *Garvin* v. *Chambers,* 195 Cal. 212, 232 Pac. 696 (cited by appellant), as follows: "Insubordination can be rightfully predicated only upon a refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed." See also *Hoopii* v. *Sinclair,* 40 Haw. 452; *Cook* v. *Civil Service Com'n,* 178 Cal. App. 2d 118, 2 Cal. Rptr. 836; *MacMillan* v. *Morgenthau,* 146 Misc. 588, 263 N.Y. Supp. 568.

Appellant's handing Thompson the previously prepared grievance appeal on May 2 was wholly unresponsive and irrelevant to the oral inquiry made of him on that date. What was set forth in the appeal cannot by any stretch be considered to have been an answer to the inquiry of whether Truck 331 or appellant was in the Honolii Pali area on the date in question.

We likewise find no merit in the argument that Thompson's comments appended to the grievance appeal indicated that he was satisfied with and accepted what was stated in the appeal as an answer to his inquiry. Appellant's reliance on the equivocal sentence contained in the comments that, "The answer which was requested of you is contained in this appeal" cannot be taken out of context to supply what the grievance appeal patently lacks, namely, a responsive reply as to whether or not the truck or appellant was at the Honolii Pali area on April 23. That it was not taken as a proper answer is evidenced from the full context of the manager's comments, particularly from the assertion that the appellant

---

[2] The common meaning of "insubordination" is given in Webster's Third New International Dictionary as "defiance of authority." In 44 C.J.S., p. 423, the word is defined as follows: "The state of being insubordinate; disobedience to constituted authority. The term implies intentional, willful disobedience, or a willful disregard of express or implied directions and refusal to obey reasonable orders."

had "failed to answer satisfactorily" a question regarding his work, and that "we are now investigating this matter" and "will take the required action as warranted."

It is our opinion that the evidence before the Civil Service Commission so completely justified a finding of insubordination that no other course was properly open to the commission but to uphold the water board manager's disciplinary action of demoting the appellant.

The judgment is affirmed.

*Frank D. Padgett* (*Robertson, Castle & Anthony* of counsel) for appellant.

*Bert T. Kobayashi,* Attorney General, and *Bertram T. Kanbara,* Deputy Attorney General, for appellee.

---

### DISSENTING OPINION BY MIZUHA, J.

Appellant at most failed to provide a satisfactory answer in this case, but did provide an answer in writing which took the form of a grievance appeal. This is not, in my opinion, insubordination as a matter of law.

*Hoopii* v. *Sinclair,* 40 Haw. 452 is not in point. The employee disobeyed a direct order to discontinue collecting refuse as an employee of a private garbage collector who did not have a legal collection permit. Likewise *Mac-Millan* v. *Morgenthau,* 146 Misc. 588, 263 N.Y. Supp. 568, has to do with insufficient explanation of disobedience to direct orders. "The employee was given an opportunity to answer the charges. His answer, covering eight type-written pages was found by the commission to be an insufficient explanation of his disobedience to departmental orders." *MacMillan* v. *Morgenthau, supra,* at 570.

I do not disagree with *Garvin* v. *Chambers,* 195 Cal. 212, 232 Pac. 696, where the court stated: "Insubordina-

tion can be rightfully predicated only on a refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed." But that is not the case here. Appellant did give what he believed to be an answer, which the water board manager construed as an unsatisfactory answer.

Department heads may now demote, suspend, or dismiss employees without the necessity of a review by the Civil Service Commission as to whether or not the facts are sufficient to support a finding that the answer is an inadequate and unsatisfactory one.

This conclusion will result in chaos in personnel relationships in our state and county civil service systems.