[No. 27826-6-I.    Division One.    April 13, 1992.]

LARRY B. CRAIN, *Appellant,* v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent.*

*William B. Knowles* and *Mary Lynn Greiner,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Kathy L. Nolan, Assistant,* for respondent.

COLEMAN, J. — Larry Crain appeals the Superior Court's order affirming the determination of the Employment Security Department Commissioner that Crain's work-related misconduct disqualified him from unemployment compensation benefits. We affirm.

Crain was employed as a production worker for approximately 9 years by Kenworth, a subsidiary of PACCAR, Inc., but was suspended on April 6, 1987, after testing positive for cocaine and marijuana. Subsequently, Kenworth stipulated that Crain could return to work if he entered a drug rehabilitation program and tested negative for drugs and

alcohol. Crain was reinstated after meeting these conditions and signing a reentry contract in which he agreed

> to take a substance abuse test at the request of the company if there is a reasonable cause to believe that substance abuse exists or to validate that you are adhering to being drug and alcohol free while at work [and] to adhere to . . . company rules of conduct[.]

Nonfulfillment of these or other conditions of the reentry contract could "result in immediate termination."

Soon after Crain returned to work, a series of incidents occurred which led to Crain's ultimate discharge. On September 17, October 2, and October 3, 1987, Crain received verbal warnings for following improper procedures. On these occasions Crain had used the wrong stock to make parts, made defective parts, or failed to remove an unneeded part from an upper die, causing concerns about safety and damage to the machinery. Finally, on October 8, 1987, Crain failed to properly clamp the top die in the 200-ton Bliss machine, and "the top die fell on to the bottom die causing considerable damage."

The Kenworth employee investigating the accident asked Crain "if he had been involved again in substance abuse", and Crain stated he had not. However, because Crain had made an unusually large number of errors from mid-September on, the employer sent Crain to Swedish Hospital for a urinalysis test. Crain tested positive for marijuana. Crain was discharged for violating the reentry contract which prohibited drug use and for his acts of negligence. Subsequently, the Employment Security Department determined that Crain was discharged for misconduct connected with his work and denied unemployment compensation benefits. Crain appealed.

On December 10, 1987, an administrative law judge (ALJ) reversed the department decision. The ALJ's findings of fact stated that Crain was terminated for the positive results on his drug test and for his acts of negligence. However, the ALJ determined that the drug test results did not amount to disqualifying misconduct because department policy pro-

hibited using such results to establish that an employee was "under the influence". In addition, the ALJ determined that Crain's acts of negligence had not been established to be willful and could not be disqualifying misconduct under *Darneille v. Department of Empl. Sec.*, 49 Wn. App. 575, 744 P.2d 1091 (1987).[1] Kenworth appealed to the Commissioner of the Employment Security Department.

The Commissioner received the agency record containing the cassette tapes of the ALJ hearing, the exhibits received into evidence, and the ALJ's findings of fact and conclusions of law. However, a portion of the oral record was inaudible. The Commissioner remanded the matter back to the Office of Administrative Hearings with instructions to conduct another hearing or to reconstruct the missing testimony. Instead, the parties stipulated to the facts as found by the ALJ.

After reviewing the record below along with the stipulated facts, the Commissioner reversed the decision of the ALJ. The Commissioner found that Crain was discharged for the acts of negligence and for violation of his reentry agreement. The Commissioner did not determine whether the acts of negligence constituted disqualifying misconduct but concluded that Crain's violation of the reentry agreement constituted disqualifying misconduct under *Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 752 P.2d 372 (1988). The King County Superior Court affirmed the Commissioner's decision. Crain appeals.

■ The sole issue on appeal is whether the Superior Court erred by upholding the Commissioner's decision denying Crain unemployment compensation benefits. RCW 50.20-.060(1) provides that an employee shall be disqualified from unemployment compensation benefits if "he or she has been discharged . . . for misconduct connected with" his or her work. Misconduct must be established by a preponderance of the evidence. Employment Security Department Unem-

---

[1]Subsequently, the Supreme Court granted review and remanded *Darneille* "for reconsideration in light of *Macey v. Department of Employment Security*, 110 Wn.2d 308, 752 P.2d 372." Noted at 110 Wn.2d 1028 (1988).

ployment Procedures and Methods Handbook 483.315 (Oct. 30, 1986). For an employee's misconduct to be disqualifying, the employee must violate a reasonable employer rule. *See Macey*, at 319.

Crain first assigns error to the Commissioner's denial of benefits, alleging that the Commissioner improperly considered facts not stipulated by the parties to augment the ALJ's findings. Although the parties stipulated to the ALJ's findings of fact after a portion of the oral record was found inaudible, the Commissioner reviewed the ALJ's findings in light of the entire record received.[2] The Commissioner then augmented the ALJ's findings of fact by noting that Crain violated his reentry agreement by failing to remain "drug and alcohol free while at work." Crain contends that this amounted to error.

██ We disagree. In finding that Crain violated the reentry agreement by failing the drug test, the Commissioner merely drew a conclusion from the undisputed facts already stipulated to by the parties. Both the ALJ and the Commissioner found that Crain had tested positive for marijuana, that the drug test "played a pivotal role in the employer's decision to discharge", and that Crain's termination notice stated he had "violated [the] terms of [the] reentry agreement". In addition, both the ALJ and the Commissioner quoted the reentry agreement which required Crain to be "drug and alcohol free while at work." Because the Commissioner drew a conclusion that did not materially alter the facts stipulated to by the parties, Crain's first assignment of error fails.

Crain next assigns error to the Commissioner's denial of benefits, asserting that the Commissioner improperly considered the drug test results in order to find a violation of the

---

[2]The Commissioner's record included the partial transcript of the ALJ hearing, the Employment Security Department's original determination notice, Crain's statement on discharge from work, Kenworth's response to Crain's claim for unemployment benefits, Crain's termination of employment notice, the Kenworth interoffice communication describing Crain's negligence prior to the accident, Crain's reentry contract, Kenworth's drug and alcohol abuse policy, and the ALJ's findings of fact and conclusions of law.

reentry agreement. Crain asserts that the drug test results cannot support a finding of misconduct on two grounds.

■ First, Crain alleges that the drug test results are hearsay and cannot be the sole basis for a finding of misconduct. Former WAC 192-09-135 provides that "no decision or finding of fact shall be based *exclusively* upon hearsay evidence".[3] (Italics ours.) The Employment Security Department concedes that the drug test results amounted to hearsay. However, the drug test was not the only evidence of drug impairment. During the 3 weeks prior to the positive test results, Crain had made an unusually large number of errors. Further, Crain was observed on one occasion totally "off in space". Because this other evidence of drug impairment supported the Commissioner's finding that Crain had violated his reentry agreement to remain drug free, the Commissioner did not err by also considering the test results to find disqualifying misconduct.

Second, Crain alleges that the drug test results cannot support a finding of misconduct under the Department's rule. The Department's rule stated:

> It is reasonable for an employer to expect . . . employees not to use illegal drugs on the job. However some employers are using the results of drug testing as the sole basis for discharging employees.
>
> . . . .
>
> At this time the results of drug testing do not constitute "evidence" as discussed in MC 190.1 above, because such test results have proven to be not wholly reliable. . . .
>
> The results of drug testing may not establish impairment or indicate (with precision) when an illegal drug was used; such results can only demonstrate the likelihood of prior drug use. Therefore, *discharging* an employee based *solely on* the employee's refusing to take or *failing a drug test, absent adverse job performance,* is *not misconduct.*

(Italics ours.) Employment Security Department Unemployment Procedures and Methods Handbook 483.315 (Oct. 30, 1986).

---

[3]Former WAC 192-09-135 was in effect on May 6, 1988, the date of the Commissioner's decision. However, the regulation was repealed by State Register 89-24-030, which was filed November 30, 1989, and became effective January 1, 1990.

■ Crain alleges that the Department rule prohibits using a failed drug test to support a finding of misconduct. While noting that the Department rule is less artfully drawn than it might be, we disagree. Although rule 483.315 notes that drug testing is not wholly reliable, it does not state that drug test results are inadmissible. As read in context, rule 483.315 merely concludes that a failed drug test *alone* is not a sufficient basis for a finding of misconduct. Because Crain failed a drug test in conjunction with adverse job performance, the Commissioner could properly consider the drug test results to find misconduct. Further, because Crain's misconduct also violated the terms of his reentry agreement, the Commissioner correctly held that Crain's misconduct violated a reasonable employer rule and disqualified him from benefits. *See Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 319, 752 P.2d 372 (1988) (summarizing "the general criteria establishing disqualifying misconduct").

Finally, Crain assigns error to the Commissioner's denial of benefits, asserting that Crain's acts of negligence do not constitute disqualifying misconduct under *Macey*. Because the Commissioner did not reach this issue in the decision below and because we decide that failure to comply with the terms of the reentry agreement constitutes disqualifying misconduct, we need not decide whether Crain's repeated acts of negligence function as an independent basis to disqualify him from unemployment compensation benefits. However, we note that repeated acts of negligence can constitute disqualifying conduct under the new rule articulated by the Supreme Court in *Macey. See Macey*, at 318.

The order of the Superior Court is affirmed, and Crain's request for attorney fees is denied.

GROSSE, C.J., and FORREST, J., concur.