DAN DOLAN, COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLEE, V. JEFFERY J. SVITAK, APPELLEE, AND CHIEF INDUSTRIES, INC., APPELLANT.

527 N.W.2d 621

Filed February 10, 1995.   No. S-93-543.

Timothy D. Loudon, of Berens & Tate, P.C., for appellant.

John F. Sheaff for appellee Dolan.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

HASTINGS, C.J.

Chief Industries, Inc., appeals from the judgment of the district court reversing the decision of the Nebraska Appeal Tribunal and restoring unemployment compensation benefits to Jeffery J. Svitak without disqualification.

## STANDARD OF REVIEW

In an appeal from the Nebraska Appeal Tribunal to the district court regarding unemployment benefits, that court conducts the review de novo on the record, but on review by the Court of Appeals or the Supreme Court, the judgment of the district court may be reversed, vacated, or modified for errors appearing on the record. Neb. Rev. Stat. §§ 48–638 (Reissue 1993) and 84–917 and 84–918 (Reissue 1994). When reviewing an order for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Lee v. Nebraska State Racing Comm.*, 245 Neb. 564, 513 N.W.2d 874 (1994). However, when reviewing a question of law, an appellate court reaches a conclusion independent of the district court's ruling. *Hausse v. Kimmey, ante* p. 23, 524 N.W.2d 567 (1994).

A rebuttable presumption of validity attaches to the actions of administrative agencies. The burden of proof rests with the party challenging the agency's action. *In re Application of United Tel. Co.*, 230 Neb. 747, 433 N.W.2d 502 (1988); *Haven Home, Inc. v. Department of Pub. Welfare*, 216 Neb. 731, 346 N.W.2d 225 (1984).

## ASSIGNMENTS OF ERROR

Chief Industries assigns that the district court erred in not finding that a positive drug test result alone constitutes misconduct under the Nebraska Employment Security Law and erred in refusing to take judicial notice of statutes, regulations, and studies establishing a nexus between one's employment and a positive drug test result.

## FACTS

Chief Industries adopted a drug–free workplace policy, effective August 1, 1992, requiring its employees to submit to drug testing. The policy specified that violations would lead to disciplinary action up to and including discharge. A positive drug test result was listed as one of the policy violations. Chief Industries adopted the policy as an attempt to improve job safety, to ensure quality production for its customers, and to demonstrate to the community its stand against chemical abuse. On May 5, 1986, Bonavilla Homes, a division of Chief Industries, employed Svitak on a full–time basis as a roof setter. Svitak, pursuant to the drug–free workplace policy, submitted a urine sample for the purpose of drug testing on September 1, 1992. On September 9, Chief Industries discharged Svitak due to positive test results for marijuana.

Svitak applied to the Nebraska Department of Labor for unemployment insurance benefits. The Nebraska Department of Labor allowed benefits, finding that Chief Industries did not discharge Svitak for misconduct in connection with work. Chief Industries appealed to the Nebraska Appeal Tribunal.

On October 29, 1992, the Nebraska Appeal Tribunal held a hearing regarding Chief Industries' appeal. At the hearing, Milton F. Ehly, personnel development manager for Chief Industries, testified that Chief Industries based its discharge of Svitak solely on the positive drug test results. Ehly also testified that he did not know of Svitak ever performing his job under the influence of marijuana.

On November 4, 1992, the Nebraska Appeal Tribunal reversed the Department of Labor's determination and ruled that a positive drug test result for the presence of illegal drugs constitutes misconduct under the Nebraska Employment

Security Law regardless of the lack of evidence showing impairment in the workplace. As a result, the Nebraska Appeal Tribunal disqualified Svitak from receiving unemployment benefits for 7 weeks.

Dan Dolan, Commissioner of Labor for Nebraska, filed a petition in district court to review the Nebraska Appeal Tribunal decision. The district court reversed the Nebraska Appeal Tribunal decision and restored Svitak's benefits without disqualification. The court held that in order to disqualify a discharged employee from unemployment compensation, the misconduct must be connected with work performance. The court found that Chief Industries did not prove a connection with work performance and did not prove that Svitak's off-duty conduct was reasonably related to the employer's interest. Chief Industries appeals. Pursuant to our authority to regulate the caseloads of the appellate courts, we have transferred the case to the Supreme Court's docket.

Chief Industries adopted a "Drug–Free Workplace Policy" to be effective September 10, 1992, which policy included some minor revisions to the August 1 policy. Svitak was furnished a copy of that policy on August 6, as indicated by his signature attached to the policy statement. According to a memorandum also attached to the policy statement, Chief Industries declared that it had as its purpose to give employees 30 days' notice of intent to test and to enforce the policy so that any employee could rid his or her system of any chemical traces.

Chief Industries declared further in the policy statement:

It is our hope and intent that by adopting this policy we will improve our plant in the following ways:

1) Improve the safety of all employees by assuring all of us that we are working without the influence of chemicals which may impair our physical skills or judgment for ourselves or toward our co–workers;

2) Insure that the product we produce for our customers will be produced with the utmost skill and quality available; and,

3) That our reputation internally and in the community shows we have taken a stand against the detrimental effects associated with chemical abuse out of respect for our

employees and customers.

## II. Prohibited Conduct

Violations of the following prohibited conduct will subject the offending employee to disciplinary action up to and including discharge.

1) Using, being under the influence of, or possessing alcohol or illegal drugs while performing Company business or while in or about a Company facility or worksite.

. . . .

## VI. Positive Results Defined

Being "under the influence of a chemical substance" which will result in a positive test result shall be determined by having contained within the body a minimum of the limits of one or more chemicals listed on Attachment A.

Attachment A reads as follows:

### SEVEN DRUG PANEL
#### Plus Alcohol

| Drug | Screening Level |
|---|---|
| . . . . | |
| 5. Cannabinoids | 100 ng/mL |

Svitak's urine test results were as follows:

| Test Name | Results | Initial Test Level (ng/mL) | Confirm Test Level (ng/mL) |
|---|---|---|---|
| . . . . | | | |
| Marijuana Metabolites (THC) | **POSITIVE** | 100 | 15 |

Initial screen performed by Enzyme Immunoassay.
MARIJUANA METABOLITE QUAL
THC–COOH          **POSITIVE**

Dolan states in his petition and Chief Industries admits in its answer that "Svitak was discharged on September 9, 1992, for violating the employer's Drug Free Workplace policy by testing positive for marijuana use." Dolan's argument, to rebut Chief Industries' claim that benefits should have been denied Svitak, is Dolan's statement in his brief that there was not any evidence of impairment, of on–the–job use, of Svitak's having placed himself or others at risk, or of a level of drugs in Svitak's

system equal to impairment. All of Dolan's statements are true. Therefore, we must decide whether Svitak's admitted violation of the policy which was promulgated for the avowed salubrious and salutary purposes sought by Chief Industries and agreed to by Svitak, constitutes "discharged for misconduct connected with his or her work." Neb. Rev. Stat. § 48–628(b) (Reissue 1993).

Chief Industries' first assignment of error contends that violation of an employer's drug test policy constitutes misconduct sufficient to disqualify a discharged employee from unemployment compensation. The standards for disqualification are established in § 48–628, which states:

An individual shall be disqualified for benefits:

. . . .

(b) For the week in which he or she has been discharged for misconduct connected with his or her work, if so found by the commissioner, and for not less than seven weeks nor more than ten weeks which immediately follow such week, as determined by the commissioner in each case according to the seriousness of the misconduct, except that if the commissioner finds that such individual's misconduct was gross, flagrant, and willful, or was unlawful, the commissioner shall totally disqualify such individual from receiving benefits with respect to wage credits earned prior to such misconduct.

## ANALYSIS

We define misconduct, pursuant to § 48–628(b), as behavior evidencing (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations. *Caudill v. Surgical Concepts, Inc.*, 236 Neb. 266, 460 N.W.2d 662 (1990); *Stuart v. Omaha Porkers*, 213 Neb. 838, 331 N.W.2d 544 (1983).

This court has not addressed whether discharge for a positive drug test result disqualifies an employee from unemployment

compensation. A review of other states' decisions displays a split among jurisdictions. Some states hold that a positive drug test result, without proof of impaired work performance, does not suffice for disqualification of benefits. *Stone Forest Industries, Inc. v. Employment Div.*, 127 Or. App. 568, 873 P.2d 474 (1994) (positive drug test result does not disqualify discharged employee from benefits without proof that employee was under the influence of drugs at work); *Weller v. Arizona Dept. of Economic Sec.*, 176 Ariz. 220, 860 P.2d 487 (Ariz. App. 1993) (positive drug test result alone does not show work-related misconduct); *Crain v. Employment Security*, 65 Wash. App. 51, 827 P.2d 344 (1992) (employee disqualified from unemployment compensation due to failed drug test in conjunction with adverse job performance); *Blake v. Hercules, Inc.*, 4 Va. App. 270, 356 S.E.2d 453 (1987) (positive drug test result does not prove willful disregard of employer rules). Other states, however, hold that a positive drug test result not only evidences some influence of controlled substances while at work, but also proves an intentional violation of drug-free work policies. *Farm Fresh Dairy, Inc. v. Blackburn*, 841 P.2d 1150 (Okla. 1992) (employer not required to show on-the-job impairment when employee failed drug test); *Grace Drilling Co. v. Director of Labor*, 31 Ark. App. 81, 790 S.W.2d 907 (1990) (positive drug test result constitutes misconduct, deliberately violates employer's rules, and disqualifies employee from unemployment benefits); *Clevenger v. Employment Security Dep't*, 105 Nev. 145, 770 P.2d 866 (1989) (continual positive drug test results showed disregard of employer rules constituting misconduct in connection with work); *Eugene v. Adm'r, Div. of Emp. Sec.*, 525 So. 2d 1185 (La. App. 1988) (positive drug test result sufficient to deny benefits for misconduct connected with employment); *Overstreet v. Dep't of Employment Security*, 168 Ill. App. 3d 24, 522 N.E.2d 185 (1988) (positive tests for cocaine constituted deliberate violation of policy constituting disqualifying misconduct).

Chief Industries relies upon our holding in *Jensen v. Mary Lanning Memorial Hosp.*, 233 Neb. 66, 443 N.W.2d 891 (1989), where the hospital discharged Jensen, a nursing assistant, for reporting to work with the odor of alcohol on her

breath despite having received a written warning of termination if she again arrived at work under those circumstances. We held that it was misconduct, under the Employment Security Law, for Jensen to report to work with the odor of alcohol on her breath when warned not to do so. Specifically, we held that in an employment position which requires close personal contact with persons served by the employer, the employer can require employees to report to work without the odor of alcohol on their breath and that a violation of such a rule is misconduct connected with work. *Id.*

In the case at bar, Svitak had notice of the drug–free workplace policy 30 days prior to taking the drug test. See *Glide Lumber Products Co. v. Emp. Div.*, 86 Or. App. 669, 741 P.2d 907 (1987) (drug test underwent detects marijuana traces for approximately 30 days after its use). Svitak's case is distinguished from *Jensen, supra*, to the extent that Svitak, as a roof setter, does not come in close personal contact with persons served by the employer. The positive drug test result, however, sufficiently proves that Svitak deliberately violated Chief Industries' rules regarding a drug–free workplace. In order for a violation of an employer's rule to constitute misconduct, the rule must bear a reasonable relationship to the employer's interests. *Smith v. Sorensen*, 222 Neb. 599, 386 N.W.2d 5 (1986).

The record indicates that Chief Industries adopted the policy in order to improve work safety, to ensure quality production for customers, and to enhance its reputation in the community by showing that it has taken a visible stand against chemical abuse and the associated detrimental effects. On appeal, Chief Industries contends that the drug–free policy is related to the employer's interest in job safety, absenteeism, productivity, morale, and health costs.

At the very least, Chief Industries sought to take a stand against illegal conduct by its employees. Neb. Rev. Stat. § 28–416(11)(a) (Cum. Supp. 1992) provides that anyone who possesses marijuana weighing less than 1 ounce shall for the first offense be guilty of an infraction, receive a citation, be subject to a fine of $100, and be required to take a course as provided by law. It would seem beyond dispute that a worker

who knowingly and deliberately violates a work rule that unquestionably seeks to enhance the employer's reputation in the community for taking a stand against illegal drug use on the job, has been guilty of " '(1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, [as well as] (3) disregard of standards of behavior which the employer can rightfully expect from the employee . . . .' " *Jensen*, 233 Neb. at 69, 443 N.W.2d at 893.

It is unnecessary for us to address the other assignments of error of Chief Industries.

The judgment of the district court is reversed, and the cause is remanded with directions to affirm the decision of the Nebraska Appeal Tribunal.

REVERSED AND REMANDED WITH DIRECTIONS.