903 P.2d 1317

**Steven R. MERRIOTT, SSN 545–64–0385, Claimant–Respondent,**

v.

**SHEARER LUMBER PRODUCTS, Employer–Appellant,**

**and**

**State of Idaho, Department of Employment, Defendant–Respondent.**

No. 21002.

Supreme Court of Idaho, Coeur d'Alene, April 1995 Term.

Sept. 27, 1995.

Randall, Blake & Cox, Lewiston, for appellant. Jay P. Gaskill argued.

Alan G. Lance, Attorney General; Jane M. Newby, Deputy Attorney General (argued), Boise, for respondent Department of Employment.

McDEVITT, Chief Justice.

## I.

### BACKGROUND AND FACTS

Steven R. Merriott (Merriott) was employed by Shearer Lumber Products (Shearer) as a part-time employee from May 22, 1992 to February 16, 1993. On January 1, 1993, Shearer began requiring all part-time employees to submit to drug tests. Prior to that time, Shearer tested part-time employees only when an employee appeared impaired or was hired as a full-time employee.

Merriott was required to take a drug test on February 9, 1993. Prior to this test, Shearer had not observed any conduct on the part of Merriott that caused Shearer to believe that Merriott had ever been under the influence of drugs or alcohol while at work.

When the test returned a positive result for T.H.C. (marijuana), Merriott admitted to Shearer that he had smoked marijuana on February 7, 1993, Merriott's day off. Shearer fired Merriott on February 16, 1993, claiming that Merriott's failure to pass the drug test violated Shearer's substance abuse policy. That policy, as provided in Shearer's employee handbook, provides:

> The use, sale, possession, purchase or transfer of non-prescription drugs on company premises or while on company business is prohibited. Employees are prohibited from being under the influence of any chemical substance or alcohol during working hours. Such substance [sic] can impair the fitness of an employee to perform their work. Any violation of this policy will subject the employee to immediate discharge.

Merriott filed a claim for unemployment insurance benefits with the Idaho Department of Employment (the Department). In an eligibility determination dated March 2, 1993, Merriott was found to be ineligible for unemployment benefits on the grounds that he had been discharged for employment related misconduct. Merriott appealed the eligibility determination to an appeals examiner, who concluded that Shearer failed to establish that Merriott was fired for employment related misconduct. Shearer appealed the appeals examiner's decision to the Industrial Commission of the State of Idaho (the Commission). The Commission affirmed decision of the appeals examiner, concluding that, because the record presented no evidence that Merriott was under the influence of alcohol or drugs while at work, Merriott did not violate Shearer's substance abuse policy. After Shearer filed a motion for reconsideration, the Commission issued a supplemental order rejecting Shearer's argument that testing positive for T.H.C. constitutes a *per se* violation of Shearer's substance abuse policy.

## II.

### ANALYSIS

This Court reviews decisions of the Industrial Commission for errors of law,

*Hart v. Deary High School,* 126 Idaho 550, 552, 887 P.2d 1057, 1059 (1994), and to determine whether the Commission's findings are supported by substantial and competent evidence. *Lethrud v. State,* 126 Idaho 560, 563, 887 P.2d 1067, 1070 (1995). Whether an employee's behavior constitutes misconduct, rendering that employee ineligible for unemployment benefits under I.C. § 72–1366(e), is a question of fact. *Taylor v. Burley Care Ctr.,* 121 Idaho 792, 793, 828 P.2d 821, 822 (1991). The Commission's conclusion in this regard will therefore be upheld if it is supported by substantial and competent evidence in the record. *Id.*

■ Misconduct within the meaning of I.C. § 72–1366(e) requires a " 'willful, intentional disregard of the employer's interest, deliberate violation of the employer's rules, or disregard of standards of behavior which the employer has the right to expect from its employees.' " *Laundry v. Franciscan Health Care Ctr.,* 125 Idaho 279, 282, 869 P.2d 1374, 1377 (1994) (*quoting Johns v. S.H. Kress & Co.,* 78 Idaho 544, 548, 307 P.2d 217, 219 (1957)). This Court has explained that "[t]he test for misconduct in standard-of-behavior cases is as follows: (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case." *Puckett v. Idaho Dep't of Corrections,* 107 Idaho 1022, 1023–24, 695 P.2d 407, 408–09 (1985). This Court in *Davis v. Howard O. Miller Co.,* 107 Idaho 1092, 1094, 695 P.2d 1231, 1234 (1984), approved the appellant's assertion that:

> some expectations and duties "flow normally from an employment relationship." Other expectations however, do not "flow naturally." If certain practices or expectations are not common among employees in general or within a particular enterprise, and have not been communicated by the employer to the employee, they cannot serve as a proper basis for a charge of employee misconduct.

*Id.*

The *Davis* Court held that:

> [t]o prevail in a showing of misconduct it was necessary for Miller to show that either the practice of gas station managers temporarily absenting themselves without notifying the head office, by its very nature, naturally falls "below the standard of behavior expected by the employer," *Matthews* [*v. Bucyrus Erie Co.,* 101 Idaho 657, 619 P.2d 1110 (1980) ], *supra, or* that he had warned his managers that this practice was unacceptable and against company policy. He showed neither.

*Id.* at 1095, 695 P.2d at 1235.

■ The Commission concluded that Shearer's substance abuse policy prohibited employees "from being under the influence of any chemical substance or alcohol during working hours[,]" without reference to non-working hours. The Commission noted that Shearer presented no evidence that Merriott was impaired while at work, nor was Merriott informed that use of controlled substances during non-working hours would violate Shearer's policy. Because there was no evidence that Merriott did not comply with Shearer's communicated substance abuse policy, the Commission concluded that Merriott was not discharged for employment-related misconduct.

Substantial and competent evidence supports the Commission's findings. The record presents no evidence that Merriott was impaired by marijuana during working hours. Shearer's substance abuse policy prohibits impairment during working hours, and no other expectation was communicated to Merriott.

## III.

## CONCLUSION

The record presents substantial and competent evidence to support the Commission's conclusion that Shearer failed to communicate its expectations to Merriott. Shearer therefore could not require Merriott to comply with its uncommunicated expectations. In this instance it was necessary for the

employer's expectations to be communicated to the employee to be reasonable. The Commission's conclusion that Merriott is eligible for unemployment benefits is affirmed. Costs on appeal to respondents.

JOHNSON and TROUT, JJ., concur.

SILAK, Justice, dissenting:

I respectfully dissent from the Court's opinion.

In my view the employer Shearer could define the term "under the influence of any chemical substance or alcohol during working hours" as equivalent to testing positive for a controlled substance in a drug test administered during working hours. The administration of the drug test was Shearer's chosen means of implementing its substance abuse policy. The purpose of the policy is to:

> prohibit drug and alcohol abuse. This prohibition is based on a number of concerns, some of which are: the physical safety of all employees; medical insurance costs; the welfare of the employee and his or her family; loss of productivity as well as potential damage to plant or equipment.

As an employer, Shearer could make the decision that impairment consisted not of physical signs or symptoms, but rather testing positive on a drug test administered during working hours. Thus, the issue whether Merriott appeared impaired at work, in the sense of impairment in the "driving under the influence" context was irrelevant to whether Merriott violated the substance abuse policy, as was the issue of whether he used marijuana during non-working hours.

Accordingly, I would reverse the decision of the Industrial Commission and deny unemployment compensation benefits to Merriott on the basis that he was discharged for work-related misconduct.

SCHROEDER, Justice, dissenting:

I respectfully dissent from the decision of the Court.

Several facts should be noted. Possession of marijuana in Idaho is a crime. Idaho Code § 37–2732(c)(1)(3). Merriott appeared at work with tetrahydrocannabinol (THC) in his system. THC is the active ingredient in marijuana. Merriott's duties included operating heavy equipment such as a backhoe, front end loader, fork lift, and track loader. These facts should lead to several conclusions different from that of the Industrial Commission.

The Industrial Commission concluded that Shearer could not require Merriott to comply with its uncommunicated expectations, indicating that Merriott was not informed that use of controlled substances during non-working hours would violate the employer's policy. This is not a policy that requires communication. The criminal laws of Idaho say that a person shall not smoke marijuana. The fact that the smoking occurred on non-work hours is irrelevant since the active ingredient of the substance was still in Merriott's body during work hours. To say, as the Commission, that Merriott was not informed that use of controlled substances during non-working hours would violate Shearer's policy does not lead to the conclusion the Commission reaches. Merriott was informed by the criminal laws not to use marijuana at any time. The substance was still in his body when he arrived at work. That is employee misconduct as defined by the employer's written policy. Considering the nature of Merriott's employment it was employee misconduct regardless of whether there was a written policy.

The Commission noted that Shearer presented no evidence that Merriott was impaired while at work. The Commission talked in terms of impairment, although the policy itself prohibited an employee from being "under the influence of *any* chemical substance" and made the additional observation that such a substance "can impair the fitness of an employee to perform their work." It would appear that the Commission believed that Merriott needed to stumble around or fail dexterity tests or burble to be impaired from doing his job. If that is the

**624**

expectation of the Commission, that expectation misses the mark. As noted previously, Merriott's duties included operating heavy equipment. One must ask the question: Could any reasonable employer send an employee out to operate heavy equipment knowing the employee had the active ingredient of marijuana in his system? The answer is, no. The potential for legal liability in the event that the employee caused harm to himself or others or simply did a bad job would seem to be significant. A plaintiff's attorney would believe that he or she had struck the motherlode if the following questions and answers occurred in a deposition or at trial:

> Question: Did you know that Merriott had smoked marijuana and tested positive for THC in his system prior to sending him out to operate heavy equipment?
>
> Answer: Yes.
>
> Question: And you still put him in charge of a dangerous piece of equipment, despite this knowledge?
>
> Answer: Yes.

Whether or not Merriott showed visible signs of physical disability or mental confusion does not finally answer the question of whether he was "under the influence" as the employer drew the rule or "impaired" as the Commission interpreted the rule. A responsible employer could not send an employee out to operate heavy equipment knowing that he tested positive for the active ingredient in marijuana[1]. That employee is under the influence or impaired for work purposes, regardless of when the employee smoked the marijuana.

Merriott committed a crime. He then showed up to work with the active ingredient resulting from that crime in his system. He lost his job as a consequence. He now gets money from his employer in a program administered by the state that defined his conduct as criminal. His employer attempted to

act responsibly in establishing a drug policy and enforcing it. Funds from that employer now go into Merriott's pocket with the assistance of the state. The business that did the right thing pays. The employee that did the wrong thing receives. The result reached by the Commission in this case is not mandated by precedent, statute or logic. It turns the concepts of fairness around. An overriding public policy should say that this cannot and will not occur.

---

1. Hypotheticals are not conclusive but may amplify the point. Does anybody want to be a passenger on an airplane with a pilot who has smoked marijuana near enough in time to test positive, or undergo surgery with a doctor in similar circumstances, or in this case be near heavy equipment operated by positive-tested Merriott?