980 P.2d 545

Marjorie A. SMITH, Claimant–
Respondent,

v.

ZERO DEFECTS, INC., Employer–
Appellant,

and

State of Idaho, Department of Labor,
Respondent on Appeal.

No. 23945.

Supreme Court of Idaho,
Boise, January 1999 Term.

May 19, 1999.

**882**

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellant.

Marjorie A. Smith, Boise, pro se respondent.

Hon. Alan G. Lance, Attorney General; Paul F. Kime, Deputy Attorney General, Boise, for respondent on appeal.

SCHROEDER, Justice.

This is an appeal from the Industrial Commission's (Commission) decision to grant unemployment benefits to Marjorie A. Smith (Smith) who was discharged from her employment. The Commission determined that the discharge was not for misconduct relating to her employment.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Smith was employed with Zero Defects in its production department from September 20, 1994, to December 4, 1995. Zero Defects manufactures electronics equipment. It has a "zero tolerance" drug policy (the policy) that provides, in relevant part, as follows:

2. Being at work under the influence of alcohol or drugs may result in discharge for the first offense.

F. "UNDER THE INFLUENCE" means being unable to perform work in a safe, efficient and productive manner; being in a physical or mental condition which creates a risk to the safety and well-being of the individual, other employees, the public, or company property; *and/or having any detectable level of alcohol or illegal drugs in the body.*

(Emphasis added). The policy requires employees to submit to urine tests on a random basis. Zero Defects' stated philosophy behind the policy is as follows:

Zero Defects believes that a healthy and productive work force that is free from the effects of illegal drugs and alcohol is important not only to Zero Defects, but also to our employees, our customers, and the local community. The abuse of drugs and alcohol creates a variety of workplace problems including increased injuries, absenteeism, theft, added cost to benefit plans, a decrease in employee morale, productivity and safety, and a decline in quality of products and services. This drug and alcohol testing policy and procedure is intended to meet our objective of safeguarding Zero Defects and its employees and customers, and the local community, and to encourage employees to seek professional assistance for substance abuse problems.

Smith admitted that she received, read and signed a copy of the policy, and that she understood that she could be terminated under the terms of the policy if she tested positive for drugs.

Smith, along with several other employees, was selected at random for a urinalysis drug screening. Her urine sample tested positive for amphetamines in the amount of 2,799 ng., with a cutoff level of 500 ng. She was discharged as a result of her positive drug test.

Smith filed a claim for unemployment benefits. During a hearing to determine her eligibility, she claimed that her urine sample had been tampered with prior to the test. Initially Smith was determined to be eligible for unemployment benefits, but Zero Defects challenged that decision, and the Redetermination Examiner reversed the decision, concluding that there was no evidence that Smith's urine sample had been tampered with and that Zero Defects had "satisfactorily established that [Smith] violated a known company policy, constituting misconduct."

The Redetermination Examiner's decision was reversed by the Appeals Examiner. The Appeals Examiner determined that because Zero Defects did not provide information indicating how far above its cutoff level the amphetamines in Smith's urine sample was, Zero Defects had failed to meet its burden of proving that Smith violated its drug policy. The Examiner concluded that Zero Defects' determination that "any" level of drugs found in an employee's urine sample constituted misconduct was an "arbitrary" determination and was not a valid basis to deny unemployment benefits.

Zero Defects appealed to the Commission, requesting an opportunity to present additional evidence regarding Smith's test results. The Commission remanded the case to the Appeals Examiner to take the testimony of Dr. Paul Teynor, who supervised the testing of Smith's urine sample, and to accept additional test result documentation. Dr. Teynor is a medical doctor who routinely reviews workplace drug test results to determine whether a medical explanation might cause a positive test.

Dr. Teynor testified to the procedures he employed and the opinion he had regarding the cause of Smith's positive test result. He stated that after testing the urine sample, he telephoned Smith to ask her if she was on any medication. She told him that she had been on several medications for a cold and back pain at the time of the testing. Dr. Teynor testified, however, that he believed these medications "would not have caused this positive test," and he expressed his opinion to Smith during their telephone conversation. According to Dr. Teynor, Smith then told him that she remembered taking her sister-in-law's prescription diet pill the weekend before the test. The diet pill would account for the amphetamines in her urine sample. Smith did not have a prescription for the diet pill. Dr. Teynor concluded that Smith had a positive test for amphetamines and reported his findings to Zero Defects. Prescription diet pills are controlled substances, and under section 37–2732(c) of the Idaho Code (I.C.), consumption by a person other than the one for whom the controlled substance is prescribed is illegal.

The Appeals Examiner concluded that: (1) Smith's "tampering" allegations were not supported by any competent evidence; (2) Zero Defects' policy to provide a drug-free work place was a reasonable policy and Smith was aware of this policy; and (3) Zero Defects met its burden of proving by a preponderance of the evidence that Smith was discharged for misconduct.

Smith appealed the decision to the Commission. The Commission adopted the findings of fact made by the Appeals Examiner, but reversed the Appeals Examiner's decision, concluding that, while Zero Defects' drug policy was reasonable in most respects, its "zero tolerance" standard was inconsistent with its stated philosophy and, thus, the policy was unreasonable. Relying on *Merriott v. Shearer Lumber Products*, 127 Idaho 620, 903 P.2d 1317 (1995), the Commission concluded that a reasonable interpretation of Zero Defects' policy required a showing of impairment. Because Zero Defects did not provide any evidence that Smith was actually "impaired" on the job, the Commission concluded that Zero Defects had not sustained its burden of proof that Smith was discharged for misconduct in connection with her employment. Consequently, the Commission determined that Smith was eligible for unemployment benefits. Zero Defects filed a timely appeal from the Commission's decision.

## II.

### STANDARD OF REVIEW

The proper standard of review was set forth in *Merriott*:

This Court reviews decisions of the Industrial Commission for errors of law, and to determine whether the Commission's findings are supported by substantial and competent evidence. Whether an employee's behavior constitutes misconduct, rendering that employee ineligible for unemployment benefits under I.C. § 72–1366(e), is a question of fact. The Commission's conclusion in this regard will therefore be upheld if it is supported by substantial and competent evidence in the record.

127 Idaho at 621–22, 903 P.2d at 1318–19 (citations omitted).

## III.

### THE COMMISSION ERRED IN DETERMINING SMITH WAS NOT DISCHARGED FOR MISCONDUCT IN HER EMPLOYMENT.

■ Unemployment benefits are not available to an employee "discharged for misconduct in connection with his employment." I.C. § 72–1366(e) (1995).[1] Misconduct in connection with employment means:

1. A willful, intentional disregard of the employer's interest;

2. A deliberate violation of the employer's reasonable rules; or

3. A disregard of the standards of behavior which the employer has a right to expect of his or her employees.

*Folks v. Moscow Sch. Dist. No. 281,* 129 Idaho 833, 837, 933 P.2d 642, 646 (1997). The Commission must consider all three grounds to determine if there has been misconduct. *Dietz v. Minidoka County Highway Dist.,* 127 Idaho 246, 248, 899 P.2d 956, 958 (1995). "The burden of proving employment-related misconduct lies with the employer." *Folks,* 129 Idaho at 837, 933 P.2d at 646.

"[T]he test for misconduct in standard-of-behavior cases [the third ground] is as follows: (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case." *Merriott,* 127 Idaho at 622, 903 P.2d at 1319 (quoting *Puckett v. Idaho Dep't of Corrections,* 107 Idaho 1022, 1023–24, 695 P.2d 407, 408–09 (1985)). "The employee's disregard of a standard of behavior need not be subjectively intentional or deliberate." *Folks,* 129 Idaho at 837, 933 P.2d at 646.

The first issue is whether Zero Defects' "zero tolerance" policy is an objectively reasonable policy. The second issue is whether having "any" detectable level of illegal drugs in the body while being at work, which is an express violation of Zero Defects' policy, constitutes misconduct in connection with employment such that Smith should be denied unemployment compensation.

### A. Zero Defects' Policy Is Reasonable.

The Commission concluded that Zero Defects' policy was unreasonable because it defines the term "under the influence" to mean "*any* detectable level of alcohol or illegal drugs in the body," and that by defining "under the influence" in this manner, the policy is inconsistent with the goals and objectives expressed in Zero Defects' statement of philosophy. Relying on this Court's decision in *Merriott,* the Commission concluded that a reasonable interpretation of the term "under the influence" requires a showing of impairment.

■ The question of whether an employer's expectation is objectively reasonable in a particular case is generally a question of fact, and the Commission's determination in this regard will not be disturbed on appeal if it is supported by substantial and competent evidence in the record. *See Folks,* 129 Idaho at 838, 933 P.2d at 647. The question of whether the Commission correctly interpreted this Court's decision in *Merriott,* however, is a question of law which is subject to free review. *See Matthews v. Bucyrus–Erie Co.,* 101 Idaho 657, 659 n. 1, 619 P.2d 1110, 1112 n. 1 (1980). A review of the *Merriott* opinion indicates that its holding that proof of impairment was necessary to show misconduct was limited to the specific facts of that case and was not meant to be applied generally in all discharge cases. In *Merriott* this Court concluded that the employer's substance abuse policy expressly prohibited employees from being impaired during working hours, and because the employer had failed to provide evidence that the claimant was impaired while at work, the claimant was eligible for unemployment compensation benefits. 127 Idaho at 622, 903 P.2d at 1319. The *Merriott* policy provided in part:

Employees are prohibited from being under the influence of any chemical substance or alcohol during working hours.

---

1. Section 72–1366(e), as it read in 1995, is now codified as § 72–1366(5).

Such substance [sic] can *impair* the fitness of an employee to perform their work. *Any violation of this policy will subject the employee to immediate discharge.*

*Id.* at 621, 903 P.2d at 1318 (emphasis added).

■ Unlike the *Merriott* policy, there is no language regarding impairment in Zero Defects' policy. Zero Defects' policy expressly defines the term "under the influence" to include "any detectable level of alcohol or drugs in the body." It does not require that the detectable level be at a level that impairs the employee's ability to perform work safely. The employer in *Merriott* was required to provide evidence of impairment because impairment was an express condition in its drug policy. There is no such express condition in Zero Defects' policy.

The Court also held in *Merriott* in regard to the particular policy that "it was necessary for the employer's expectations to be communicated to the employee to be reasonable." *Id.* at 622–23, 903 P.2d at 1319–20. *See also Folks*, 129 Idaho at 838, 933 P.2d at 647; *Campbell v. Bonneville County Bd. of Comm'rs*, 126 Idaho 222, 226, 880 P.2d 252, 256 (1994). The *Merriott* court concluded that the employer had failed to communicate its expectation to its employee that use of a controlled substance during non-working hours would be a violation of the employer's drug policy. 127 Idaho at 622, 903 P.2d at 1319. The only expectation actually communicated to the employee was that being impaired while at work would be a violation of the employer's drug policy.

Unlike *Merriott*, Zero Defects clearly communicated its rule that being at work with "any detectable level of alcohol or drugs in the body" would constitute a violation of its drug policy and could result in a discharge. Smith admits that she read, understood and signed Zero Defects' policy which contained this express rule. Zero Defects' "zero tolerance" rule was clearly communicated to Smith and was a reasonable expectation of the employment.

■ The Commission also determined that Zero Defects' "zero tolerance" policy was unreasonable because it was inconsistent with the goals and objectives stated in Zero Defects' statement of philosophy. As previously noted, Zero Defects' statement of philosophy is as follows:

Zero Defects believes that a healthy and productive work force that is free from the effects of illegal drugs and alcohol is important not only to Zero Defects, but also to our employees, our customers, and the local community. The abuse of drugs and alcohol creates a variety of workplace problems including increased injuries, absenteeism, theft, added cost to benefit plans, a decrease in employee morale, productivity and safety, and a decline in quality of products and services. This drug and alcohol testing policy and procedure is intended to meet our objective of safeguarding Zero Defects and its employees and customers, and the local community, and to encourage employees to seek professional assistance for substance abuse problems.

Maintaining a completely drug-free workplace is consistent with Zero Defects' goals in reducing absenteeism and theft and maintaining employee morale and productivity. The Commission improperly focused on safety concerns by requiring Zero Defects to provide evidence of impairment. Safety concerns are not the only goals and objectives set forth in Zero Defects' philosophy statement.

Zero Defects communicated its "zero tolerance" policy to Smith. Its "zero tolerance" standard is consistent with the stated objectives and goals behind Zero Defects' policy. The policy is reasonable.

**B. Smith's Actions Do Constitute "Misconduct" Such That She Should Be Disqualified From Receiving Unemployment Compensation.**

Other than the holding in *Merriott*, this Court has not addressed whether discharge for a positive drug test, without proof of impaired work performance, is a sufficient basis to disqualify a claimant from unemployment benefits. Other jurisdictions have addressed the specific question, but have reached different conclusions.

Some states require proof of impairment. *See, e.g., Weller v. Arizona Dep't of Econ. Sec.,* 176 Ariz. 220, 860 P.2d 487, 492–94 (App.1993); *National Gypsum Co. v. State Employ. Sec. Bd. of Review,* 244 Kan. 678, 772 P.2d 786, 793 (1989); *Stone Forest Indus., Inc. v. Employment Div.,* 127 Or.App. 568, 873 P.2d 474, 475 (1994); *Crain v. Employment Sec. Dep't,* 65 Wash.App. 51, 827 P.2d 344, 347 (1992). Other states have concluded that as long as an employer's "zero tolerance" drug policy is communicated to its employees and the policy is reasonably related to the employer's interests, evidence of impairment is not required in order to show misconduct. *See, e.g., Dolan v. Svitak,* 247 Neb. 410, 527 N.W.2d 621, 626 (1995); *Nevada Employ. Sec. Dep't v. Holmes,* 112 Nev. 275, 914 P.2d 611, 617 (1996); *Clevenger v. Nevada Employ. Sec. Dep't,* 105 Nev. 145, 770 P.2d 866, 869 (1989); *Farm Fresh Dairy, Inc. v. Blackburn,* 841 P.2d 1150, 1153 (Okla. 1992); *Johnson v. Department of Employ. Sec.,* 782 P.2d 965, 971 (Utah Ct.App.1989).

This Court has previously held the following:

> A rule laid down by the employer governing off-duty conduct of his employees must have a reasonable relationship to the employer's interests in order that [a] violation thereof will constitute misconduct barring eligibility for unemployment compensation benefits.

*O'Neal v. Employment Sec. Agency,* 89 Idaho 313, 317, 404 P.2d 600, 602 (1965). In *O'Neal,* the claimant was a U.S. Post Office employee who had been charged with, and had pled guilty to, several serious felonies. The incidents leading to the employee's felony convictions occurred while the employee was off duty. *Id.* at 315, 404 P.2d at 601. The Post Office discharged the employee on the basis that his convictions violated a postal regulation which prohibited "infamous, dishonest, immoral, or notoriously disgraceful conduct." *Id.* The Commission held that the employee had not been discharged for misconduct in connection with his employment and determined that he was eligible to receive unemployment benefits. The employment agency appealed. This Court reversed the Commission's decision, holding that the

employee's actions did amount to misconduct barring him from receiving unemployment benefits. The Court recognized the following:

> An employee's conduct off the working premises or outside the course or scope of his employment is generally not considered as misconduct in connection with the employment. There are recognized circumstances, however, as where the conduct is so closely connected with the business interests of the employer as to warrant disqualification for unemployment benefits.
>
> Here ... claimant admitted violating the cited postal regulation which forbids infamous, dishonest, immoral or notoriously disgraceful conduct. An employer, be he public or private, has the right to expect his employees to refrain from acts which would bring dishonor on the business or the institution.

*Id.* at 319, 404 P.2d at 603–04.

Zero Defects has a right to expect its employees to refrain from conduct that may bring dishonor on the business. Testing positive for illegal drugs while manufacturing highly technical electronics equipment is the type of conduct that could bring dishonor to a business like Zero Defects that stakes its reputation on an image of "zero tolerance" for error. Zero Defects has a right to ensure that its customers are confident that they will receive a quality product. Zero Defects' objective in preserving customer confidence was expressed in a letter written by its president to its employees, which stated in part:

> Our primary objectives [in adopting this policy] are employee health and safety, along with fulfilling obligations to the public and customers, protecting private and public property, and preserving the confidence placed in us.

The "zero tolerance" policy it adopted is reasonably related to that interest. The policy was clearly communicated to Smith. Smith's conduct is sufficiently connected with the business interests of Zero Defects to warrant disqualification for unemployment benefits.

The Court's decision in *Beaty v. City of Idaho Falls,* 110 Idaho 891, 719 P.2d 1151 (1986) does not affect the Court's decision in

this case. The *Beaty* court held that an employee's conviction for possession of illegal guns and marijuana during non-working hours was not "so closely connected with the [employer's] interests as to warrant disqualification for unemployment benefits." *Id.* at 893, 719 P.2d at 1153. The basis for the Court's decision in *Beaty,* however, was that there was no evidence that the employee had deliberately violated the employer's code of conduct (prohibiting commission of a felony) or the spirit of the rule. *Id.*

Unlike *Beaty,* the evidence in this case is that Smith's violation of Zero Defects' "zero tolerance" standard was deliberate. She admits that she knew that she could be terminated if a drug test revealed any detectable level of alcohol or drugs in her system while at work. Despite this knowledge, she ingested a prescription diet pill that was not prescribed for her use. The fact that she claims she did not know it was illegal to ingest another person's prescription pill does not vitiate the fact that she deliberately took a pill that under the law was illegal for her to use. *See State v. Fox,* 124 Idaho 924, 926, 866 P.2d 181, 183 (1993) (ignorance of the law is not a defense).

Smith's actions constitute misconduct because: (1) she deliberately violated Zero Defects' reasonable rule, and (2) her conduct fell below the standard of behavior expected by Zero Defects, and Zero Defects' expectation was objectively reasonable in the particular case.

## IV.

## CONCLUSION

The decision of the Industrial Commission awarding Smith unemployment benefits is reversed.

Justices SILAK, WALTERS and KIDWELL, concur.

Chief Justice TROUT, dissenting.

Because I believe the record provides substantial and competent evidence to support the Commission's findings, I must respectfully dissent.

The sole issue before this Court is whether Zero Defects discharged Smith for misconduct in connection with her employment. Following a random drug test, Zero Defects terminated Smith for violating its drug and alcohol policy. The specific rule in question provides: "Being at work under the influence of alcohol or drugs *may* result in discharge for the first offense." (emphasis added). The policy defines "under the influence" as follows:

"UNDER THE INFLUENCE" means being unable to perform work in a safe, efficient and productive manner; being in a physical or mental condition which creates a risk to the safety of the individual, other employees, the public, or company property; *and/or* having *any detectable level* of alcohol or illegal drugs in the body.

(emphasis added).

Whether an employee's behavior constitutes misconduct or, more specifically here, whether an employer's rules and expectations are reasonable is a question of fact. *Folks v. Moscow Sch. Dist. No. 281,* 129 Idaho 833, 838, 933 P.2d 642, 647 (1997). If supported by substantial and competent evidence, this Court will not disturb the Commission's factual findings on appeal. *Id.* at 836, 933 P.2d at 645.

The Commission did not, as the majority finds, rely on *Merriott v. Shearer Lumber Products,* 127 Idaho 620, 903 P.2d 1317 (1995) in concluding that Zero Defects' policy required a showing of impairment. Instead, the Commission found the "any detectable level" provision in the policy's definition of "under the influence" to be "unreasonable as it relateds [sic] to the stated Philosophy of the Policy." The Commission then struck that language, and applying the remainder of the definition, the Commission found that there was no evidence that Smith was unable to perform her work "in a safe, efficient and productive manner." The definition, as modified by the Commission, clearly required a showing of impairment which the Commission merely found to be "consistent with the holding in *Merriott.*" Absent such a showing, Zero Defects failed to prove Smith was discharged for misconduct.

.. 

**888**

The Commission's findings are supported by substantial and competent evidence and should not be disturbed. Zero Defects related to Smith the "philosophy" behind its policy as follows:

> Zero Defects believes that a healthy and productive work force that is *free from the effects* of illegal drugs and alcohol is important not only to Zero Defects, but also to our employees, our customers, and the local community. The *abuse* of drugs and alcohol creates a variety of workplace problems including increased injuries, absenteeism, theft, added cost to benefit plans, a decrease in employee morale, productivity and safety, and a decline in quality of products and services. This drug and alcohol testing policy and procedure is intended to meet our objective of safeguarding Zero Defects and its employees and customers, and the local community, and to encourage employees to seek professional assistance for substance abuse problems.

(emphasis added). The policy also allowed employees to voluntarily admit "to a substance abuse problem." An employee doing so may be given leave pending successful completion of a rehabilitation program. Moreover, the rule only provided that an employee "may" be terminated for a first offense. Consequently, the Commission could reasonably find that Zero Defects did not truly have a zero tolerance policy, and, therefore, the "any detectable level" provision in the definition of "under the influence" was unreasonable in light of Zero Defects' overall drug and alcohol policy. Therefore, the Commission's decision finding Smith eligible for unemployment insurance benefits should be affirmed.