# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42873-2015

| | | |
|---|---|---|
| CLARENCE L. COPPER, | ) | |
| | ) | **Boise, December 2015 Term** |
| Claimant-Appellant, | ) | |
| | ) | **2016 Opinion No. 3** |
| v. | ) | |
| | ) | **Filed: January 22, 2016** |
| ACE HARDWARE / SANNAN, INC., | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Employer, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IDAHO DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Clarence L. Copper, Post Falls, submitted a brief on his behalf.

Tracey K. Rolfsen, Deputy Attorney General, Boise, submitted a brief on behalf of the Respondent.

---

EISMANN, Justice.

This is an appeal from an order of the Industrial Commission that the Appellant is not entitled to unemployment benefits because he was discharged for misconduct in connection with his employment for violating his employer's written policies. We affirm the order of the Commission.

## I.
### Factual Background.

Clarence L. Copper ("Claimant") was an employee of Ace Hardware / Sannan, Inc. ("Employer"), from March 5, 2004, until he was terminated on July 1, 2014. Prior to that date, Claimant was reprimanded numerous times for failing to perform his job duties. About one week before his termination, Claimant had been warned that he would be terminated for any further violation of Employer's written policies. The written policies included a provision granting employees a merchandise discount allowing them to purchase merchandise at 20% above store cost. With respect to that discount, the policies provided: "Only the Employee can make the purchase and you must have another employee ring up the purchase. All purchases must be made on your own time. Employee purchases made during the day must be paid for and kept in the office until you leave the store." Claimant had received and signed for a copy of the written policies.

On July 1, 2014, Claimant's father came into the store to purchase some items. While he was on shift, Claimant gave a cashier his discount code, so that his father could purchase the items at a discount. After making the purchase, Claimant's father left the store with the items. Employer terminated Claimant for allowing another person to use his discount code to purchase items and because the purchase was not made on Claimant's own time (he was not on break).

Claimant applied for unemployment benefits, and he was determined to be eligible. Employer timely filed a protest, and the matter was heard by an appeals examiner, who ruled in favor of Claimant. Employer appealed to the Industrial Commission, which conducted a de novo review of the record and issued its findings of fact, conclusions of law, and order reversing the decision of the appeals examiner. The Commission held that Employer had proved that it had terminated Claimant for violating Employer's written policies, which constituted misconduct in connection with employment. Claimant then timely appealed to this Court.

## II.
### Can Claimant Submit Additional Evidence on Appeal?

Claimant seeks to submit on appeal a letter from a former employee of Employer as additional evidence to support his claim. When an unemployment compensation case is appealed to the Commission from an appeals examiner, "[t]he record before the commission shall consist of the record of proceedings before the appeals examiner, unless it appears to the commission that the interests of justice require that the interested parties be permitted to present

additional evidence." I.C § 72-1368(7). Only the Commission has the authority to take additional evidence, and it did not do so in this case. Therefore, that letter will not be considered on appeal.

**III.**
**Were the Commission's Findings Supported by Substantial and Competent Evidence and Did the Commission Properly Apply the Facts to the Law?**

Our review of decisions of the Industrial Commission is limited to questions of law. Whether the Commission's factual findings are supported by substantial and competent evidence is a question of law, as is the application of the facts to the law. *Stark v. Assisted Living Concepts, Inc.*, 152 Idaho 506, 508, 272 P.3d 478, 480 (2012) (citations omitted). A claimant is not eligible for unemployment benefits if the claimant was discharged for misconduct in connection with his or her employment. I.C. § 72-1366(5). There are three classifications of misconduct, which are:

> a. Disregard of Employer's Interest. A willful, intentional disregard of the employer's interest.
> b. Violation of Reasonable Rules. A deliberate violation of the employer's reasonable rules.
> c. Disregard of Standards of Behavior. If the alleged misconduct involves a disregard of a standard of behavior which the employer has a right to expect of his employees, there is no requirement that the claimant's conduct be willful, intentional, or deliberate. The claimant's subjective state of mind is irrelevant. The test for misconduct in "standard of behavior cases" is as follows:
>> i. Whether the claimant's conduct fell below the standard of behavior expected by the employer; and
>> ii. Whether the employer's expectation was objectively reasonable in the particular case.

IDAPA 09.01.30.275.02 (1999).

Based upon the facts of a particular case, the classifications can be overlapping. For example, in *Dingley v. Boise Cascade Corp.*, 104 Idaho 476, 660 P.2d 941 (1983), we held that the employee's misconduct "was violative of the employer's interests and of standards which the employer was entitled to expect and enforce." *Id*. at 477, 660 P.2d at 942. In *Kivalu v. Life Care Centers of America*, 142 Idaho 262, 127 P.3d 165 (2005), we held that the employee's misconduct in violating the employer's reasonable rules was also a violation of behavior that the employer had a right to expect. *Id*. at 264, 127 P.3d at 167.

We stated in *Smith v. Zero Defects, Inc.*, 132 Idaho 881, 980 P.2d 545 (1999), that "[t]he Commission must consider all three grounds to determine if there has been misconduct." *Id*. at 884, 980 P.2d at 548. In making that statement, we cited *Dietz v. Minidoka County Highway District,* 127 Idaho 246, 248, 899 P.2d 956, 958 (1995). *Smith*, 132 Idaho at 884, 980 P.2d at 548. The quoted statement from *Smith* is an inaccurate characterization of the holding in *Dietz*. In *Dietz*, the Commission cited all three classifications of misconduct, but only considered one of them in deciding that the employer had failed to prove that the employee's conduct constituted misconduct in connection with his employment. *Dietz*, 127 Idaho at 248, 899 P.2d at 958. We simply held in *Dietz,* "Because a claimant's actions constitute misconduct if they fall within any of the three grounds comprising the definition of misconduct, the Commission should have considered all three grounds for determining misconduct." *Id*.

The issue is whether the claimant was discharged for misconduct in connection with his or her employment. Misconduct is defined as being one of three classifications of conduct. If the Commission concludes that the claimant's conduct constituted misconduct under one of the classifications, it can, but is not required to, determine whether the conduct also constituted misconduct under one or both of the other two classifications. If the Commission finds that the claimant's conduct did not constitute misconduct under one classification, but fails to expressly address one or both of the other classifications, its decision will be upheld if its findings are sufficient to establish that the claimant's conduct would not constitute misconduct under the other classification(s). *Clay v. BMC W. Truss Plant*, 127 Idaho 501, 505, 903 P.2d 90, 94 (1995). Likewise, if we conclude on appeal that there was sufficient evidence supporting the Commission's determination that Claimant had engaged in misconduct under one of the classifications, we need not address its findings regarding any other classification.

In this case, the Commission found that Claimant's conduct constituted a violation of one provision in Employer's employee discount policy, namely, "All purchases must be made on your own time."[1] In its analysis, the Commission only analyzed Claimant's conduct to

---

[1] The relevant part of the written policy provided as follows:

In order to receive the discount the following Employee purchase policy must be followed:

> Only the Employee can make the purchase and you must have another employee ring up the purchase.

determine whether it involved a disregard of a standard of behavior which Employer had a right to expect of his employees.

"The test for misconduct in 'standard of behavior cases' is as follows: i. Whether the claimant's conduct fell below the standard of behavior expected by the employer; and ii. Whether the employer's expectation was objectively reasonable in the particular case." IDAPA 09.01.30.275.02 (1999). The Commission found that "Employer's [employee discount] policy is objectively reasonable under the circumstances" and that based on the "record, Claimant's conduct fell below the standard of behavior Employer expected." Claimant contends that the Commission erred in finding that the standard of behavior was expected by Employer because the requirement that purchases be made on the employee's own time was not enforced.

Claimant had worked for Employer a little over ten years. He testified that prior managers on various occasions had called him to the front of the store to give the cashier his employee number in order for his parents to obtain the employee discount. He also testified that other employees purchased merchandise while they were on duty. The current manager testified that he had held his position for about two years and that since he had been the manager, employees had to purchase merchandise "off the clock" (when they were not on duty).

The employer has the burden of proving that the employee was discharged for employment-related misconduct. IDAPA 09.01.30.275.01. When the issue is raised that the

---

All purchases must be made on your own time. Employee purchases made during the day must be paid for and kept in the office until you leave the store.

Merchandise must be for the Employee's direct use, or that of only his/her immediate family (spouse and/or children) residing with Employee only. In the case of an Employee residing with his/her parent(s), immediate family will include the parent(s).

Under no circumstances may you assemble purchases and put them away for recording at a later time or date.

Merchandise can never be purchased for resale.

All Employee purchases are to be recorded at the established price. Purchases may only be made on the Employee's off-duty time or at the end of their work shift. The sale must be recorded on a store invoice. Employees must never ring up their own purchase. The merchandise should be removed from the store once the sale transaction is complete. Cashiers are not permitted to ring up their own purchases or of any relative or person residing in their household under any circumstances. We suggest you advise family members of this fact to avoid any embarrassment at a later time.

Failure to follow the above will result in disciplinary action up to and including discharge, depending upon the seriousness of the violation.

5

employer had no expectation that a policy would be followed because the employer had allowed its employees to violate the policy, the employer still has the burden of proving that it expected that the policy would be followed by the claimant who was terminated.

During the two-year period of the current manager, Claimant had been reprimanded numerous times for not performing his duties and instead staying in the small engine department. He had also been reprimanded for insubordination. The exhibits in the record show numerous such instances beginning on March 13, 2013, and continuing through June 16, 2014. For the last incident, he was given a seven-day suspension. About a week prior to his termination, Claimant had been warned that he would be terminated if he committed any future violation of Employer's policies or was insubordinate. Claimant testified that "the week before this I was given a piece of paper stating that if I violated any company policy, was insubordinate to anybody, or made any violations, I would be terminated." Claimant had a copy of Employer's policies.

An employer has the discretion to require a stricter compliance with written policies by a problem employee than by other employees. In this case, it is irrelevant whether other employees were allowed to purchase items when they were on duty. Prior to the incident for which he was terminated, Claimant had been expressly warned that if he committed a violation of any of Employer's policies, he would be terminated. On July 1, 2014, it is undisputed that Claimant again left his duties and walked to the front of the store in order to give the cashier his discount code so his father could purchase some merchandise. The evidence supports the Commission's finding that Claimant's conduct fell below the standard of behavior Employer expected. Therefore, there was substantial and competent evidence that Employer terminated Claimant for misconduct in connection with his employment.

Claimant also contends that two provisions in the policy are vague and ambiguous. He points to these two sentences: "Employee purchases made during the day must be paid for and kept in the office until you leave the store. . . . The merchandise should be removed from the store once the sale transaction is complete." The first sentence states that employee purchases "*must* be . . . kept in the office until you leave the store," and the second states that the merchandise "*should* be removed from the store once the transaction is complete." (Emphases added.) The difference between *must* and *should* need not be addressed because these provisions are irrelevant to this case. Claimant was not fired for violating either of these two provisions.

## IV.
## Conclusion.

We affirm the order of the Industrial Commission, and we award Respondent costs on appeal.

Chief Justice J. JONES, Justices BURDICK, W. JONES, and HORTON **CONCUR.**