549 P.2d 270

**William AVERY, Claimant-Appellant,**

v.

**B & B RENTAL TOILETS, Employer, and Department of Employment, De-fendants-Respondents.**

No. 11917.

Supreme Court of Idaho.

May 4, 1976.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Gordon S. Nielson, Senior Deputy Atty. Gen., Boise, for plaintiff-appellant.

Hartwell H. K. Blake, Pocatello, for defendant-respondent.

Louis Garbrecht, III, Idaho Legal Aid Services, Inc., Twin Falls, for claimant-appellant.

R. LaVar Marsh, Raymond N. Malouf, Asst. Attys. Gen., Dept. of Employment, Boise, for defendants-respondents.

BEEBE, District Judge.

This is an appeal from an order of the Industrial Commission denying unemployment insurance benefits to claimant-appellant William Avery (hereinafter appellant) on the ground that he was discharged from employment for insubordination constituting misconduct. As then applicable, I.C. § 72–1366 provided in pertinent part:

> "*Personal eligibility conditions.*—The personal eligibility conditions of a benefit claimant are that—(f) His unemployment is not due to the fact that he . . . was discharged for misconduct in connection with his employment." [1]

Appellant's argument on appeal is that the finding of insubordination is not supported by substantial and competent evidence and therefore the order of the Industrial Commission cannot be sustained.

1. This statute has been relettered so that it now appears as I.C. § 72–1366(e).

We agree with this argument and reverse the order of the Industrial Commission.

Appellant was employed by B & B Rental Toilets of Twin Falls, Idaho (hereinafter B & B Rental), from June 1973 until December 3, 1974, when his employment was terminated. His responsibilities during his employment consisted of installing and servicing portable toilet units which were distributed by B & B Rental to different enterprises throughout southeastern Idaho. Appellant was required to drive a truck to the various sites to perform his servicing duties on each unit once a week. He drove approximately 1,000 miles a week on his route in order to service the units. His normal work week was between 45 and 50 hours, although on occasion, during the heavy summer season, he would work as much as 60 hours a week.

Appellant was discharged from his employment on December 3, 1974, during a telephone conversation with his employer. Finding Number Three of the Industrial Commission summarizes the incident:

> "While in Rigby, the plaintiff discovered a number of units in a particularly dirty condition. He called the employer to report the matter and told the employer that he would not work more than 60 hours a week. The employer attempted to explain to the claimant that this would not be necessary because his overall workload had decreased substantially and extra time required to clean the units would not be a regular occurrence. The claimant did not accept this explanation and also complained that the employer had rearranged his route cards, which changed the claimant's schedule and routing. The employer informed the claimant that he could route or schedule the claimant as he desired. The claimant expressed his unhappiness at the employer's reply and according to the employer, 'blew his stack.' The employer then discharged the claimant."

The key finding of fact made by the Industrial Commission at issue in this appeal is Finding Number Four which states:

> "The Commission finds that claimant would not have been required to work over sixty hours during his final week and that his usual work week was much less than sixty hours. Claimant had worked as much as sixty hours a week during the summer without apparent objection. The Commission also concludes that the employer had the right to route or schedule the claimant and the claimant's objections to the employer's actions in this respect are without merit. The Commission finds that the claimant was discharged for insubordination to his employer."

Based in part upon this finding, the Industrial Commission made the following conclusion of law:

> "A claimant for unemployment insurance benefits is ineligible if his unemployment is due to the fact that he was discharged for misconduct in connection with his employment. The Commission concludes that the claimant was discharged for misconduct in connection with his employment and is therefore ineligible for unemployment insurance benefits."

The Industrial Commission, having found as a matter of fact, that claimant was discharged for insubordination to his employer, and having concluded as a matter of law that the insubordination was misconduct in connection with his employment within the purview of I.C. § 72–1366(e) thereupon entered an order affirming the decision of its appeals examiner which had denied appellant's claim for benefits under the Employment Security Law. I.C. § 72–1301 *et seq.*

■ Findings of fact made by the Industrial Commission in unemployment cases will be sustained on appeal if supported by substantial and competent evidence.[2] However, an order of the Industrial

2. *Clay v. Crooks Industries*, 96 Idaho 378, 529 P.2d 774 (1974); *Levesque v. Hi-Boy Meats, Inc.*, 95 Idaho 808, 520 P.2d 549 (1974); *Toland v. Schneider*, 94 Idaho 556, 494 P.2d 154 (1972); *Alder v. Mountain States Telephone & Telegraph Co.*, 92 Idaho 506, 446 P.2d 628 (1968).

Commission which is not supported by the record will be set aside by this Court.[3]

Respondent recognizes that the issue of whether insubordination is "misconduct" within the purview of I.C. § 72–1366(e) is a question of law. Insubordination connotes a deliberate or wilful refusal by an employee to obey a reasonable order or directive which an employer is authorized to give and entitled to have obeyed.[4] The record discloses no deliberate or wilful refusal on appellant's part to obey a reasonable order or directive given to him by his employer. There was no order to work sixty hours the week of December 3, 1974, which was disobeyed. The employer's testimony in this regard was as follows:

"Q. You didn't fire him for refusal to work, did you, you fired him for refusal to work more than sixty hours a week?

A. He never worked over sixty hours a week, so, there's no basis for firing him."

Nor in voicing objections to his employer's actions in rearranging the route cards was appellant violating any directive of his employer.

The employer testified in this vein as follows:

"Q. What is the basic reason, in your mind, right now, that you fired the claimant?

A. Oh, I imagine one reason is blowing up on the phone the way he

did, telling me that I hadn't the right to go through the service cards and such things like this. It was kind of a petty thing, but I don't think he showed any respect to me as his employer."

The employer further testified:

"Q. You stated it was a petty argument. Do you feel that this was a basis for firing him, a mere petty argument? He did not refuse to work for you, he simply refused not to work over sixty hours a week and you know that wasn't going to exceed sixty hours a week anyway.

A. What I meant was for him getting disturbed and blowing his cork over such a thing as working over his file cards.

Q. So, in effect, he wasn't fired for insubordination, he was fired for having an argument with you, or personal disagreement?

A. That, too."

Misconduct, which will disqualify a claimant from receiving employment benefits under the Employment Security Act, includes a disregard of standards of behavior which the employer has a right to expect of his employee.[5] While an employer has a right to expect that his employees will not engage in protracted argument after an order or directive is given to an employee, yet he cannot expect that his employees will at all times be absolutely docile or servile.

---

3. I.C. § 72–732; *Garrow v. Idaho State School & Hospital*, 95 Idaho 817, 520 P.2d 864 (1974); *Custom Meat Packing Company v. Martin*, 85 Idaho 374, 379 P.2d 664 (1963).

4. *See Parrish v. Civil Service Com'n. of County of Alameda*, 66 Cal.2d 260, 57 Cal. Rptr. 623, 425 P.2d 223 (1967); *Beatty v. Automatic Catering, Inc.*, 165 Colo. 219, 438 P.2d 234 (1968); *School Dist. No. 8, Pinal County v. Superior Court of Pinal County*, 102 Ariz. 478, 433 P.2d 28 (1967); *State Tenure Commission v. Madison County Board of Ed.*, 282 Ala. 658, 213 So.2d 823 (1968); *Porter v. Pepsi-Cola Bottling Co. of Columbia, S. C.*, 47 S.C. 370, 147 S.E.2d 620 (1966), cert. denied, 385 U.S. 827, 87 S.Ct. 61, 17

L.Ed.2d 63 (1966); *Muldrow v. Board of Public Instruction of Duval County*, 189 So. 2d 414 (Fla.App.1966); *Cunningham v. Civil Service Commission, County of Hawaii*, 48 Haw. 278, 398 P.2d 155 (1964).

5. *Johns v. S. H. Kress & Company*, 78 Idaho 544, 307 P.2d 217 (1957); *Watts v. Employment Security Agency*, 80 Idaho 529, 335 P.2d 533 (1959); *Rasmussen v. Gem State Packing Company*, 83 Idaho 198, 360 P.2d 90 (1961); *Custom Meat Packing v. Martin*, supra n. 3; *O'Neal v. Employment Security Agency*, 89 Idaho 313, 404 P.2d 600 (1965); *Oliver v. Creamer Heating & Appliance*, 91 Idaho 312, 420 P.2d 795 (1966); *Levesque v. Hi-Boy Meats, Inc.*, supra n. 2.

The findings of the Industrial Commission characterize appellant's conduct in the telephone conversation with his employer as not accepting the employer's explanation, expressing unhappiness and, according to his employer he "blew his stack." The expressions used by the employer were "blowing up" and "blowing his cork." These expressions are slang conclusions. The attitude or temperament of appellant in the conversation was as follows:

"Q. What was the tone of his voice on the phone?

A. What was ---.

Q. Was he yelling at you, or talking or ---?

A. He was very nervous, it was above average.

Q. How your wife fights with you sometimes?

A. Something like that."

The employer described appellant as a good worker, up to the time of the incident of appellant's firing. No evidence was introduced of other incidents of a similar nature prior to this one occurrence. There was no evidence that appellant used vulgar or abusive language during the conversation. In their relationship, neither the employer nor the employee had an intermediary.

The telephone conversation was initiated by the employee to report an unusual circumstance, as he had been instructed to do. In this instance, the circumstance was finding eight portable toilets in filthy condition, due to having been transported by the employer without first being emptied. The employer's failure to clean before transporting was the result of an equipment breakdown. The employer so informed the employee. The conversation went into the job aspects and the employee's complaints.

The employer's standard of sensitivity or expectation was born with the occasion. The result reached by the Industrial Commission would require a standard of unswerving docility and servility. The law does not set such a standard. A single incident of comparatively nonserious disrespect by complaining and arguing is not misconduct. 76 Am.Jur.2d, Unemployment Compensation, § 52 and § 55 (1975); and annotation entitled "Employee's Insubordination as Barring Unemployment Compensation", 26 A.L.R.3d 1333 (1969).

In this case we are not concerned with the right of an employer to terminate an employment, but solely with the issue of whether the termination was for "misconduct" within the purview of I.C. § 72–1366(e). Under the facts of this case, we hold that the employee's conduct which precipitated his discharge did not as a matter of law constitute misconduct so as to render appellant ineligible for unemployment compensation benefits.

The order of the Industrial Commission is reversed and remanded with directions that appellant's eligibility for unemployment compensation be redetermined in conformity with this opinion. Costs to appellant.

McFADDEN, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.