# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38715

BROOKE A. STARK,                               )
                                               )     **Boise, February 2012 Term**
    Claimant,                      )
                                               )     **2012 Opinion No. 33**
v.                                             )
                                               )     **Filed: March 1, 2012**
ASSISTED LIVING CONCEPTS, INC.,                )
                                               )     **Stephen W. Kenyon, Clerk**
    Employer-Appellant,            )
                                               )
and                                            )
                                               )
IDAHO DEPARTMENT OF LABOR,                     )
                                               )
    Respondent.                    )
                                               )

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>reversed</u>.

Bradley S. Richardson, Garrett Richardson PLLC, Eagle, argued for appellant.

Tracey K. Rolfsen, Deputy Attorney General, Boise, argued for respondent.

---

EISMANN, Justice.

This is an appeal from a decision of the Industrial Commission holding that an employee's refusal to obey a direct order from a supervisor to answer a question related to the employer's business did not constitute misconduct under the Employment Security Law. We reverse the decision of the Commission.

## I.

### Factual Background.

The material facts in this case are undisputed. From April 21, 2008, through October 29, 2010, Brooke Stark (Claimant) was employed by Assisted Living Concepts, Inc., (Employer) as

the residence director of Sylvan House, one of Employer's assisted living facilities. On October 29, 2010, Claimant was called during work by Employer's Regional Director of Sales to discuss different topics related to the facility where Claimant worked. During that conversation, Claimant asked if he had heard a rumor that Teton House, another assisted living facility operated by Employer, was closing. He responded that he had not.

Later that evening at about 6:30 p.m., Employer's Divisional Director of Human Resources telephoned Claimant at her home. He asked her where she had heard that Teton House was closing. Claimant refused to disclose her source.

About five minutes later, Employer's Chief Executive Officer telephoned Claimant, with the Divisional Director of Human Resources also being on the line. The CEO asked Claimant where she had heard the rumor that Teton House was closing. Claimant stated that she had talked to a number of people. The CEO responded that this was important information and she did not need to know all of the sources. She again asked Claimant who told her that Teton House was closing, and Claimant answered that she did not want to share that information. The CEO again emphasized the importance of that information and stated that they needed to let the people who talked to Claimant know that the facility was not going to close. The CEO then said that she would ask Claimant again and direct her to tell who provided the information that Teton House was closing. Claimant again stated that she would not reveal the information and added that she will "take one for the team." The CEO then suspended her immediately pending an investigation. The Divisional Director later contacted Claimant, and she still refused to disclose the source of her information. Employer's Vice President of Human Resources then investigated the matter and concluded that Claimant had violated the employee handbook by refusing to follow a direct order from a supervisor. On November 2, 2010, Employer then terminated Claimant effective October 29, 2010.

Claimant applied for unemployment benefits, and she was initially determined to be eligible. Employer appealed, and the Appeals Examiner reversed the eligibility determination, finding that Claimant was discharged for misconduct. Claimant the appealed to the Industrial Commission, which conducted a de novo review of the record. It ruled that Claimant's insubordination did not constitute misconduct in connection with employment. It therefore reversed the decision of the Appeals Examiner and held that Claimant was entitled to unemployment benefits. Employer timely appealed to this Court.

2

## II.

### Standard of Review.

Our review of decisions of the Industrial Commission is limited to questions of law. Idaho Const. Art. V, § 9. Whether the Commission's factual findings are supported by substantial and competent evidence is a question of law, *Fife v. Home Depot, Inc.*, ___ Idaho ___, 260 P.3d 1180, 1184 (2011), as is the application of the facts to the law, *Sprague v. Caldwell Trans., Inc.*, 116 Idaho 720, 722, 779 P.2d 395, 397 (1989).

## III.

### Analysis.

A claimant under the Employment Security Law is not eligible for benefits if the claimant was "discharged for misconduct in connection with his [or her] employment." I.C. § 72-1366(5). The employer has the burden of proving that the employee was discharged for employment-related misconduct. IDAPA 09.01.30.275.01.

The Commission held that Claimant's alleged misconduct was not in connection with her employment because "Claimant's job duties revolved around Sylvan house. Providing the source of the information is not directly related to Claimant's job duties nor did it have any direct effect on those duties." The Commission's conclusion in this regard is clearly erroneous. The statute does not require that the misconduct be "directly related to" or "directly effect" the claimant's duties. It requires that the misconduct be "in connection with" the claimant's employment. In this case, Claimant had learned of information that she volunteered to the regional sales director while they were discussing Employer's business. The information also concerned Employer's business. Later that day, the Divisional Director of Human Resources and the CEO telephoned Claimant seeking the source of that information because they believed it was important to Employer's business. Claimant's refusal to answer the question regarding the source of the information was clearly connected with her employment. In fact, she testified that her reason for refusing to reveal the information was that she did not want anyone else in the company to get in trouble. Under the Commission's analysis, it would not constitute misconduct for an employee to refuse to answer questions about the misconduct, including embezzlement, of a co-employee because the questioning did not concern the employee's own specific duties.

3

Because the relevant behavior was in connection with Claimant's employment, the next issue is whether it constituted misconduct. It must be either a disregard of the employer's interest, a violation of the employer's reasonable rules, or a disregard of a standard of behavior that the employer has the right to expect. IDAPA 09.01.30.275.02. "The Commission must consider all three grounds when determining whether an employee's termination was a result of employment-related misconduct." *Adams v Aspen Water, Inc.*, 150 Idaho 408, 413, 247 P.3d 635, 640 (2011).

In this case, the Commission did not consider all types of conduct that can constitute misconduct. It only considered whether Claimant's conduct constituted a disregard of a standard of behavior that the employer had the right to expect.

"If the alleged misconduct involves a disregard of a standard of behavior which the employer has a right to expect of his employees, there is no requirement that the claimant's conduct be willful, intentional, or deliberate." IDAPA 09.01.30.275.02.c. "The test for misconduct in 'standard of behavior cases' is as follows: [a] Whether the claimant's conduct fell below the standard of behavior expected by the employer; and [b] Whether the employer's expectation was objectively reasonable in the particular case." *Id*. In this case, it is undisputed that Claimant's refusal to answer the CEO's questions fell below the standard of behavior expected by Employer. However, the Commission decided that Employer's expectation was not objectively reasonable because "there is no evidence that Claimant revealing the source would allow Employer to put an end to the rumor." The test is whether the employer's expectation was objectively reasonable, not whether the Commission subjectively believed it would be efficacious had Claimant complied with the request. It was clearly objectively reasonable for the CEO to seek to track down the source of the rumor. The CEO's concerns were that the rumor would negatively impact employees and tenants at the Teton House, and she testified "that the information getting back to Teton House did cause families to move out and subsequently we have had to close the building." The Commission also stated, "There is no indication that Claimant's source was the one to start the rumor or that others had not heard the rumor and it continued to spread." The Commission did not seek to explain how Employer could have discovered whether Claimant's source started the rumor or how far it had spread when Claimant refused to reveal any of her sources." As a matter of law, Claimant's conduct as revealed by the

4

undisputed facts constituted the disregard of a standard of behavior which Employer had a right to expect of its employees.

The Department of Labor argues: "This Court has concluded however, that merely being insubordinate is insufficient to prove misconduct. The law does not 'require a standard of unswerving docility and servility,' " quoting from *Avery v. B & B Rental Toilets*, 97 Idaho 611, 615, 549 P.2d 270, 274 (1976). The quotation from *Avery* had nothing to do with insubordination. In *Avery*, the employee's job consisted of installing and servicing portable toilets at various locations. The employee telephoned his employer to complain about the condition of some of the toilets, which the employee thought would cause him to work more than sixty hours a week, and to express his unhappiness with the employer changing his route or schedule. After the employee expressed his dissatisfaction, the employer fired him. The Commission found that the employee was fired for insubordination and therefore was not entitled to unemployment benefits. After determining that there was no insubordination shown by the record, *id.* at 614, 549 P.2d at 273, the Court addressed whether the employee expressing his disagreement would constitute a disregard of standards of behavior which the employer has a right to expect of his employee. *Id.* In connection with that analysis, the Court wrote, "While an employer has a right to expect that his employees will not engage in protracted argument after an order or directive is given to an employee, yet he cannot expect that his employees will at all times be absolutely docile or servile." *Id.* Although an employer cannot expect employees to at all times be absolutely docile or servile, it can expect employees to comply with the employer's legitimate direct orders.

The Commission did not address the other two types of conduct that can constitute misconduct because of our statement in *Folks v Moscow School Dist. No. 281*, 129 Idaho 833, 933 P.2d 642 (1997), that "[t]he 'intentional insubordination' cases draw our focus more closely to the first prong-whether the employee's insubordination was such that it fell below a standard which the employer had a right to expect." *Id.* at 837, 933 P.2d at 646. However, intentional insubordination is not limited in its analysis to that type of conduct.

Misconduct also consists of "a deliberate violation of the employer's reasonable rules." IDAPA 09.01.30.275.02. In this case, Employer's rules declared it to be an infraction justifying termination for an employee to refuse to follow a direct order from a supervisor. As a matter of law, Claimant's conduct constituted a deliberate violation of Employer's reasonable rules.

5

Therefore, it also constituted misconduct in connection with her employment under Idaho Code section 72-1366(5).

The third type of misconduct is a disregard of the employer's interest. In this case, Claimant's conduct also constituted as a matter of law the disregard of Employer's interest. Employer stressed to Claimant the importance of the information requested, and she refused to disclose the information.

The Commission gave three other rationales in an attempt to justify granting benefits in this case. First, it stated: "There is no indication that Claimant had a history of insubordination. Rather, Claimant's failure to abide by Employer's directive appears to be an isolated instance." The Commission did not state how many instances of insubordination it considered necessary in order to constitute misconduct. The Commission's analysis is contrary to the law. While an employer permitting objectionable conduct for a period of time can make it objectively unreasonable to expect that the employee would refrain from such conduct without a prior warning, *Folks*, 129 Idaho at 838, 933 P.2d at 647, a pattern of misconduct is not required. Only a single incident is necessary to constitute misconduct under Idaho Code section 72-1366(5). *Adams v. Aspen Water, Inc.*, 150 Idaho 408, 415, 247 P.3d 635, 642 (2011). "[T]he issue of whether an employer should have chosen a different form of discipline from its hierarchy of disciplinary measures is wholly irrelevant when considering whether an employee's actions constitute employment-related misconduct." *Id*. at 416-17, 247 P.3d at 643-44.

The Commission also stated, "Further, there is little evidence that Claimant's failure to abide by Employer's directive directly caused harm. Nor is there any indication that Employer learning of the source would limit any alleged harm that may have occurred." There is no requirement that the misconduct cause the employer harm, whether direct or indirect, in order for it to constitute misconduct under Idaho Code section 72-1366(5).

Finally, the Commission held that Claimant's conduct fell within the exception set out in IDAPA 09.01.30.275.03, which states:

> Inability to Perform or Ordinary Negligence. Mere inefficiency, unsatisfactory conduct, failure of good performance as the result of inability or incapacity, inadvertencies, isolated instances of ordinary negligence, or good faith errors in judgment or discretion are not considered misconduct connected with employment.

6

In applying the facts to that rule, the Commission stated, "Claimant's decision to not reveal the source in order to protect the workers, but provide her supervisor with the concern constitutes a good faith error in judgment or discretion and is not considered misconduct connected with the employment." The Commission clearly misapplied the facts to the rule. The rule by its clear terms refers to an employee's unintended substandard performance of his or her duties. It has nothing to do with the intentional insubordination.

## IV.

## Conclusion

As a matter of law, Claimant's conduct constituted misconduct in connection with her employment under Idaho Code section 72-1366(5). We reverse the order of the Industrial Commission and award appellant costs on appeal.

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**