## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 40559-2012

| | | |
|---|---|---|
| DEANNE MUCHOW, | ) | |
| | ) | **Idaho Falls, May 2014 Term** |
| Claimant-Appellant, | ) | |
| | ) | **2014 Opinion No. 47** |
| v. | ) | |
| | ) | **Filed: June 17, 2014** |
| VARSITY CONTRACTORS, INC., | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Employer-Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| IDAHO YOUTH RANCH, Cost | ) | |
| Reimbursement Employer, and IDAHO | ) | |
| DEPARTMENT OF LABOR. | ) | |
| | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is _affirmed_.

DeAnne Muchow, Blackfoot, argued in her own behalf.

Nathan R. Long, Pocatello, argued for respondent Varsity Contractors.

_____

EISMANN, Justice.

This is an appeal from the Industrial Commission which held that the claimant was not entitled to receive unemployment benefits because she had been discharged for employment-related misconduct. We affirm the order of the Commission.

### I.
### Factual Background.

DeAnne Muchow, the claimant, began working for Varsity Contractors, Inc., on February 2, 2011, as a human resources assistant. During her employment, the claimant had an ongoing conflict with her supervisor and had lodged several complaints about her supervisor with the

director of the department. On June 26, 2012, the director decided to have a meeting with the claimant and her supervisor in an effort to resolve the conflict.

During the meeting, the claimant and her supervisor both stated that they had documentation outlining their complaints. The director told them to get their documentation and bring it back to his office. The claimant asked if they could do so the following day because she wanted time to look over her documentation, but the director denied that request because he was leaving the next day on a business trip. He did give the claimant a few minutes to look over her documentation. She returned to her desk and after a few minutes printed her documentation. She took the documents and walked toward the director, who was standing outside his office. The claimant waved the documents in the air, told the director she had them and was going to shred them, and walked past him toward the shredder. He told her not to shred them, but she continued to the shredder and shredded them. The director then discharged her for insubordination.

The claimant applied for unemployment benefits, which were initially denied. She appealed, and an appeals examiner held an evidentiary hearing by telephone. He later issued findings of fact and conclusions of law and reversed the ruling that the claimant was not entitled to unemployment benefits. He held that as a matter of law there was no insubordination. The basis of his ruling was that the director's order not to shred the documents was not a directive that the director was authorized to give and entitled to have obeyed, because the documents belonged to the claimant and contained her personal notations about issues and problems she was having with a coworker. The employer then appealed to the Industrial Commission.

The commission adopted the findings of fact made by the appeals examiner. However, the commission disagreed with the conclusions of law made by the appeals examiner. Relying upon *Dietz v. Minidoka County Highway District*, 127 Idaho 246, 248, 899 P.2d 956, 958 (1995), the commission stated that misconduct in connection with an employee's employment would include a disregard of standards of behavior that the employer has a right to expect of an employee. The commission held that the director requested the documents because they pertained to a conflict between two employees that he was attempting to resolve; that he had a reasonable expectation that his order not to shred the documents would be obeyed; and that the claimant chose to disregard the director's order and shredded the documents. The commission concluded that her conduct constituted employment-related misconduct, and it reversed the

decision of the appeals examiner and held that the claimant was not eligible for unemployment benefits. The claimant then appealed to this Court.

## II.
## Analysis.

"Our review of decisions of the Industrial Commission is limited to questions of law. Whether the Commission's factual findings are supported by substantial and competent evidence is a question of law, as is the application of the facts to the law." *Stark v. Assisted Living Concepts, Inc*., 152 Idaho 506, 508, 272 P.3d 478, 480 (2012) (citations omitted).

A claimant under the Employment Security Law is not eligible for benefits if the claimant was "discharged for misconduct in connection with his [or her] employment." I.C. § 72–1366(5). The employer has the burden of proving that the employee was discharged for employment-related misconduct. IDAPA 09.01.30.275.01.

In this case, the alleged misconduct was in connection with the claimant's employment. The documents requested by the director were to help him try to resolve a conflict between two employees. *See Stark*, 152 Idaho at 508, 272 P.3d at 480 (an employee's refusal to reveal the source of a rumor concerning another of the employer's businesses was employment related even though it did not concern the employee's specific duties).

The claimant first challenges certain factual findings made by the commission. "The Commission's findings of fact will only be disturbed if not supported by substantial and competent evidence." *Adams v. Aspen Water, Inc*., 150 Idaho 408, 412, 247 P.3d 635, 639 (2011).

> Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented.

*Eacret v. Clearwater Forest Indus*., 136 Idaho 733, 735, 40 P.3d 91, 93 (2002) (citations omitted).

In response to the claimant's request to meet the following day, the commission found, "Since [the director] was leaving on a business trip the next morning, he informed Claimant that

3

they could not meet the next day but that she could have a few minutes to look it over." The claimant asserts that there was no evidence that the director was leaving on a business trip the next day. The director testified, "She wanted some additional time to proof read and she actually asked to visit again tomorrow with the documentation, but I was leaving on a business trip at 6:00 in the morning, so I wanted to get it now . . . ." His testimony was substantial and competent evidence supporting the commission's finding.

The commission found: "[T]he whole purpose of the meeting on June 26, 2012 was to get to the bottom of the conflict between Claimant and [her supervisor], and [the director] had not once informed Claimant that she was going to be fired. Nor had [the director] made any decision to discharge Claimant prior to her shredding the documents." The claimant contends that this finding is not supported by the evidence and that the purpose of the meeting from the beginning was to dismiss her. The director testified in response to questions from claimant: "I'm answering your questions as to . . . why I had that meeting and that it wasn't preconceived—had no preconception to terminate you at that meeting. I didn't." His testimony was substantial and competent evidence supporting the commission's finding.

Finally, the commission found: "As Claimant passed by [the director] and approached the paper shredder, [the director] told Claimant not to shred the documents. Claimant shredded the documents anyway." The claimant contends that this finding was not supported by the evidence and that she was not instructed not to shred the documents until they were already in the shredder. The director testified:

> I was walking past DeAnne's cubicle area and she came out with a few pieces of paper, I don't know how many, but she came walking out and she kind of flashed them near my face and said here is—here it is. Here is the documentation. I just—I just want to—I just want you to know that I'm not a liar, that I have it, and I'm going to shred it. And I said, no, DeAnne, I said—I said don't shred the documents, bring them into my office like we discussed, so—so I can look at your, you know, your documentation. [The supervisor] is coming in with hers. Bring it in. Well, she kept walking past my office and she said and she turned and said, "And I deleted it off my hard drive." . . . Anyway, so she kept walking past my office and down the hall about 15 feet to the shredder and—and I continued to watch her and I didn't really think she was going to shred the documents, to be honest. I didn't think she would do that. And so she walked over to the desk of [the payroll clerk] where the shredder was located and I could tell she was trying to figure out how to turn it on and I guess [the payroll clerk] had flipped the switch on for her and she started lowering the documents down into the shredder and right at that point I just thought she's—she really is trying to—and so the

4

documents went down and—were starting to go down right down in the shredder and I said, DeAnne, do not shred those documents and I was pretty stern at that point and I wanted to make it clear that those documents were not to be shredded, to be brought back to my office like we discussed and she was continuing to let them shred and we both watched as the documents were shredded and I was standing still outside my office and she came back and said I just want to clear the slate.

The commission's finding is supported by substantial and competent evidence.

Many of the claimant's arguments are based upon the contention that she was not ordered not to shred the documents until after they were already in the shredder. Because the commission's finding to the contrary is supported by substantial and competent evidence, we need not address those arguments.

The claimant cites a case out of Michigan for the proposition: "[M]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." *Carter v. Michigan Emp't Sec. Comm'n,* 364 Mich. 538, 541, 111 N.W.2d 817, 819 (1961). That statement is similar to IDAPA 09.01.30.275.03, which states, "Mere inefficiency, unsatisfactory conduct, failure of good performance as the result of inability or incapacity, inadvertencies, isolated instances of ordinary negligence, or good faith errors in judgment or discretion are not considered misconduct connected with employment." "The rule by its clear terms refers to an employee's unintended substandard performance of his or her duties." *Stark*, 152 Idaho at 510, 272 P.3d at 482. The rule has nothing to do with intentional insubordination. *Id*. The claimant also cites *Rasmussen v. Gem State Packing Co.*, 83 Idaho 198, 360 P.2d 90 (1961), although it is unclear how that decision is helpful to the claimant. In that case, this Court held that an employee committed misconduct in connection with his employment for one act of disregarding the standards of behavior which the employer had a right to expect of him. *Id*. at 203-04, 360 P.2d at 93.

In this case, the commission found that by disobeying the director's order not to shred the documents, the claimant disregarded a standard of behavior that the employer has a right to expect of an employee. "If the alleged misconduct involves a disregard of a standard of behavior which the employer has a right to expect of his employees, there is no requirement that the

5

claimant's conduct be willful, intentional, or deliberate. The claimant's subjective state of mind is irrelevant." IDAPA 09.01.30.275.02.c.

The claimant argues that the document "was owned by the claimant and was hers to do with as she saw fit." The document was prepared by the claimant on a company computer and printed on company paper, and it contained information relevant to the director's attempt to resolve an ongoing conflict between the claimant and her supervisor. The document was not the claimant's to do with as she wished. If, as in *Stark*, it was employment-related misconduct to refuse the employer's demand to answer a question regarding the employer's business, the claimant's refusal to give the documents to the director was clearly misconduct in connection with her employment.

The claimant also argues that she "did not engage in protracted argument after an order or directive was given and the law does not 'require a standard of unswerving docility and servility,'" citing *Avery v. B.B. Rental Toilets*, 97 Idaho 611, 549 P.2d 270 (1976). The issue in *Avery* was not the refusal of the employee to do what he had been ordered to do. It was complaining about what he had been told to do by his employer. Thus, we said, "A single incident of comparatively nonserious disrespect by complaining and arguing is not misconduct." *Id*. at 615, 549 P.2d at 274. In *Stark*, which involved an employee's refusal to answer a question from her employer, we held, "Only a single incident is necessary to constitute misconduct under Idaho Code section 72–1366(5)." 152 Idaho at 510, 272 P.3d at 482. Likewise, in *Adams*, a single incident of misconduct (taking three hours off work without permission) was sufficient to constitute misconduct. 150 Idaho at 414-15, 247 P.3d at 641-42.

The claimant requests "reimbursement of all expenses and fees incurred by her due to the former employer's unnecessary and unsubstantiated appeals," pursuant to Idaho Code section 72-1367. Not only was the employer's appeal to the commission meritorious, but the statute has no application to the awarding of costs on appeal.

**III.**
**Conclusion.**

We affirm the order of the Industrial Commission, and we award respondent costs on appeal.

6

Chief Justice BURDICK, Justices J. JONES, W. JONES, and HORTON **CONCUR.**