# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 50045

AMY SHUMWAY,

      Claimant-Respondent,

v.

EVANS CHIROPRACTIC,
PA, Employer,

      Defendant-Appellant,

and

IDAHO DEPARTMENT OF
LABOR,

      Respondents.

Boise, August 2023 Term

Opinion filed: December 28, 2023

Melanie Gagnepain, Clerk

---

Appeal from the Idaho Industrial Commission.

The decision of the Idaho Industrial Commission is <u>reversed</u>.

Cooper & Larsen, Chtd., Pocatello, attorney for Appellant, Evans Chiropractic, P.A. Anthony Budge argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent, Idaho Department of Labor. Douglas Werth argued.

Amy Shumway, pro se.

---

BEVAN, Chief Justice.

This appeal stems from an Idaho Industrial Commission ("Commission") decision that awarded unemployment benefits to Amy Shumway.[1] Shumway's employment was terminated by her employer, Appellant Evans Chiropractic, PA ("Evans Chiropractic"), for alleged misconduct. Shumway applied for unemployment benefits, and an Appeals Examiner with Respondent Idaho

---

[1] Shumway is not participating in this appeal.

1

Department of Labor ("IDOL") entered a determination finding Shumway eligible for benefits. Evans Chiropractic appealed to the Commission, which affirmed IDOL's decision but on different grounds. Evans Chiropractic timely appealed to this Court. Evans Chiropractic argues that the Commission should have found Shumway ineligible for benefits because her employment was terminated for job-related misconduct. Evans Chiropractic asks this Court to reverse the Commission's decision and hold that Shumway is not eligible to receive benefits as a matter of law. IDOL maintains that the Commission did not apply the correct legal standards, but it contends that the proper procedure is to vacate the Commission's award and remand the case. For the reasons below, we reverse the Commission's decision and hold that Shumway is ineligible for benefits as a matter of law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2019, Shumway was hired to work as a front desk receptionist for Evans Chiropractic. Evans Chiropractic provides chiropractic and massage care for its patients. It shares an office space with Brizee Family Medicine in Pocatello, Idaho. The owners of Evans Chiropractic—Dr. Nathan Evans ("Evans") and Dr. John Hitchcock ("Hitchcock")—share certain employees, such as receptionists, with Dr. David Brizee ("Brizee") of Brizee Family Medicine.[2] All providers share the same reception area. Shumway testified that Brizee had hired her, but the Commission found she was hired by Evans. It is undisputed that Hitchcock did not hire her.

Hitchcock terminated Shumway's employment on or about April 14, 2022, for insubordination. Although Hitchcock testified that Shumway had been discharged for several reasons, the primary reason was that Shumway never saw him as her boss, and that she refused to meet with him on several occasions. Hitchcock testified as follows:

> [Shumway], towards the end especially, never really saw me as her – as her boss and so it was very difficult to work with [her] or to have her come in for meetings. In fact, multiple times she refused to come meet with me and so that was the ultimate reason. There is [sic] others, but that was the main reason. I think on the third time I tried to – to communicate I needed to meet with her, she still refused, and that was the date that we ended up letting her go.

The relationship between Shumway and Hitchcock began deteriorating following an incident around March 16, 2022, when Shumway believed Hitchcock had left a patient on a muscle

---

[2] The Commission erroneously referred to a "Dr. Handcock" several times in its decision and order. In its opening brief, Evans Chiropractic clarifies there is no Dr. Handcock at Evans Chiropractic.

stimulation therapy too long. As a result, Shumway informed the patient he did not need to pay for his visit. Hitchcock, however, disagreed, and he directed Shumway to collect payment from the patient. Shumway admitted that this event made her upset with Hitchcock.

The next day, Shumway asked to have a private meeting with Evans to discuss her concerns about Hitchcock. In her meeting with Evans, Shumway shared that Hitchcock commented that "he had made it very well known that he had been the one that had fired massage therapists in the past and he lorded it over our head to the point where you felt very intimidated by that and felt that if you pushed his buttons the wrong way or if you got on his bad side that you would be terminated." Evans informed Shumway that he would talk to Hitchcock and get back to her.

On March 22, Evans called Shumway to the back of the office and said Hitchcock would like to speak with her to apologize. Shumway told Evans she did not feel comfortable being alone with Hitchcock. Evans "suggested very heavily" that Shumway speak with Hitchcock, and so she did. Shumway said her subsequent conversation with Hitchcock was "pretty intense." Near the end of the conversation, Shumway told Hitchcock to "stop micromanaging the scheduling up front." At that point, Shumway reported that Hitchcock's "ears got bright red and he sat up in his chair, he got very – his face – you know, you could tell that he was very upset . . . ." Shumway testified that Hitchcock told her that "you are going to have to speak with me if you want to continue to work here . . . ." Shumway said she did not feel comfortable after Hitchcock made that comment, and she left the room.

Around March 31, Shumway had another one-on-one meeting with Evans. In that meeting, Shumway apologized for the situation with Hitchcock after which Evans reportedly assured Shumway that her job was safe and that everything would be okay.

Because Shumway worked in an open reception area in the front of the office and Hitchcock was generally in a back office, Hitchcock tried to keep personnel matters private by asking Shumway to talk to him in his office. Because his office was some distance from Shumway's workspace, when Hitchcock wanted to talk with Shumway he typically would communicate via Skype and ask her to come back to see him. Hitchcock testified he tried to meet with Shumway on April 4 and again on April 13 to no avail. Hitchcock explained that he had sent Shumway a Skype message and worked in his office while he waited for her to come back, but when he would go to the front office, he would see Shumway had already left. Shumway testified that she did not meet with Hitchcock following the March 22 meeting because she did not feel

3

comfortable speaking to him alone. Together with attempting to meet with Shumway privately, Evans Chiropractic held employee group meetings to address problematic behavior so Shumway would not feel singled out.

According to Hitchcock, Shumway was intense and antagonized patients and other employees with her behavior. For example, Hitchcock testified that several employees had expressed difficulties working with Shumway, which caused them to leave work early and some even threatened to quit. Hitchcock also recounted several times when his patients complained that Shumway was rude to them.

Several employees told Hitchcock that Shumway said she was not willing to work for him after the March 16 patient treatment/payment issue and she would not send out his appointment reminders. Shumway denied that she deliberately failed to send out Hitchcock's appointment reminders, testifying that she must have gotten busy and forgotten to send them out. But she admitted she had not forgotten to send out appointment reminders for the other two providers.

Despite these problems, Evans and Hitchcock were willing to overlook many complaints because Shumway did the focus of her job well. Evans Chiropractic had no written policies in place to handle workplace conflicts.

On Thursday, April 14, 2022, to make sure Shumway met with him, Hitchcock waited in the conference room so Shumway could not leave without walking by him. When she walked by, Hitchcock called her into the conference room and informed Shumway that her employment was being terminated. Shumway felt Hitchcock fired her in retaliation for the March 16 patient treatment/payment issue and testified that she would have preferred to have been fired by the doctor who she says hired her, Brizee.

After being fired, Shumway applied for unemployment benefits. Evans Chiropractic contested her eligibility. Following a hearing in which both Shumway and Hitchcock testified, the IDOL Appeals Examiner determined that Shumway had been discharged for insubordinate conduct. Despite that finding, the Appeals Examiner held Shumway was eligible for benefits because Shumway had never been put on notice that failure to meet with Hitchcock would result in termination:

> The employer discharged the claimant for insubordinate conduct. . . . Without argument, the employer has a right to expect employees to meet with it when requested. This is a standard expectation in the workplace. However, . . . had the

claimant been put on notice that her failure to meet with the owner would result in discharge, this might well have had a different outcome.

Evans Chiropractic appealed the decision to the Commission. The Commission concluded that Shumway was eligible for benefits because Evans Chiropractic had failed to show that Shumway breached a clearly communicated expectation of her employment. Evans Chiropractic timely appealed to this Court.

## II.    STANDARDS OF REVIEW

"In appeals from the Commission, this Court's review is limited to questions of law, 'which include whether the Commission's factual findings are supported by substantial and competent evidence and the application of the facts to the law.'" *Hiatt v. Health Care Idaho Credit Union*, 166 Idaho 286, 290, 458 P.3d 155, 159 (2020) (quoting *Harper v. Idaho Dep't of Labor*, 161 Idaho 114, 116, 384 P.3d 361, 363 (2016)). When, as here, the employee was separated from employment by a discharge, the employer has the burden of proving that the employee was discharged for employment-related misconduct. *Copper v. Ace Hardware/Sannan, Inc.,* 159 Idaho 638, 641, 365 P.3d 394, 397 (2016); IDAPA 09.01.30.275.01.

## III.    ANALYSIS

### A.  The Commission erred by concluding that Evans Chiropractic had failed to meet its burden of proving Shumway was fired for job-related misconduct.

Evans Chiropractic argues there is substantial evidence in the record that Shumway was insubordinate when she continuously refused to comply with Hitchcock's reasonable expectation to meet to discuss her behavior at work. Thus, it argues there is sufficient evidence that Shumway was terminated for job-related misconduct and that this Court should reverse the Commission's decision and hold Shumway is ineligible to receive benefits. IDOL agrees the Commission misapplied the law in reaching its decision, but it argues that this conclusion requires a remand to the Commission for further proceedings.

Reviewing the record, we conclude that the Commission erred when it determined that Evans Chiropractic failed to meet its burden of proving that Shumway was terminated for job-related misconduct. "Claimants who have become unemployed through no fault of their own may be entitled to unemployment insurance benefits." *Hiatt*, 166 Idaho at 290, 458 P.3d at 159. But a claimant is not entitled to benefits where the claimant's unemployment is "because of the claimant's discharge for misconduct in connection with the claimant's employment." I.C. 72-

1366(5). As noted above, "[t]he burden of proving that a claimant was discharged for employment-related misconduct rests with the employer." IDAPA 09.01.30.275.01.

"The focus of the inquiry is not whether the employer's reason for discharge was reasonable but, rather, whether the misconduct was work-related so as to make the employee ineligible for unemployment benefits." *Adams v. Aspen Water, Inc.*, 150 Idaho 408, 413, 247 P.3d 635, 640 (2011) (citing *Beaty v. City of Idaho Falls*, 110 Idaho 891, 892, 719 P.2d 1151, 1152 (1986)). Misconduct is defined in three ways: (1) a willful, intentional disregard of the employer's interest; (2) a deliberate violation of the employer's reasonable rules; or (3) a disregard of a standard of behavior which the employer has a right to expect of its employees. IDAPA 09.01.30.275.02.a-c. The claimant's subjective state of mind is irrelevant. IDAPA 09.01.30.275.02.c.

Evans Chiropractic fired Shumway for insubordination. Insubordination may satisfy any of the three categories of misconduct identified in IDAPA 09.01.30.275.02. But this Court has noted that analyzing insubordination under the third category of misconduct, the "standards of behavior" test, appears to be the most appropriate category. *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 837, 933 P.2d 642, 646 (1997). We will thus apply this test to our analysis here.

In a standards of behavior case, the test for misconduct is identified in Idaho's regulations. The Commission, as factfinder, must determine both of the following:

    i. Whether the claimant's conduct fell below the standard of behavior expected by the employer; and

    ii. Whether the employer's expectation was objectively reasonable in the particular case.

IDAPA 09.01.30.275.02.c.i–ii.

The first condition addresses what the employer *subjectively* expected from the employee, and the second considers whether the employer's expectations are *objectively* reasonable. *See Adams*, 150 Idaho at 413, 247 P.3d at 640. In *Adams,* we defined what "objectively reasonable" means for an employer:

> In order for an employer's expectation to be objectively reasonable, the expectation must be communicated to the employee, unless the expectation is the type that flows naturally from the employment relationship. An expectation flows naturally from the employment relationship when the expectations are common among employees in general or within a particular enterprise. Such expectations are generally limited to fundamental expectations and do not involve specific rules

6

unless clearly embodied in the job at issue. *See, e.g.*, *Pimley v. Best Values, Inc.*, 132 Idaho 432, 435, 974 P.2d 78, 81 (1999) (holding that a retail employer has a reasonable expectation flowing naturally from the employment relationship that its employees will not make vulgar comments about coworkers and supervisors in the presence of customers and other coworkers); *Bullard v. Sun Valley Aviation, Inc.*, 128 Idaho 430, 434, 914 P.2d 564, 568 (1996) (finding that an employer's expectation that an employee will comply with federal rules and the employer's manual, which both required permission prior to crossing a runway, flowed naturally from a line service position at an airport). In other words, the relevant question is whether the employee has breached "a standard of behavior that would flow normally from an employment relationship or which was communicated to [the employee] because of its uncommon nature." *Wulff v. Sun Valley Co.*, 127 Idaho 71, 75, 896 P.2d 979, 983 (1995).

*Adams*, 150 Idaho at 413–14, 247 P.3d at 640–41 (alterations in original).

Thus, an expectation that flows naturally need not be communicated to an employee to be objectively reasonable. *Hiatt*, 166 Idaho at 291, 458 P.3d at 162 (citing *Adams*, 150 Idaho at 413, 247 P.3d at 640). "An expectation flows naturally from the employment relationship when the expectations are common among employees in general or within a particular enterprise." *Adams*, 150 Idaho at 413, 247 P.3d at 640 (citing *Appeals Exam'r of Idaho Dep't of Labor v. J.R. Simplot Co.*, 131 Idaho 318, 322, 955 P.2d 1097, 1101 (1998)).

    *1. The Commission misapplied the standards of behavior test.*

We first take this opportunity to correct a misstatement of law by the Commission. Citing *Puckett v. Idaho Department of Corrections*, 107 Idaho 1022, 1024, 695 P.2d 407, 409 (1985), the Commission wrote that "[a]n employee can only be held accountable for breaching those expectations that he or she understood, explicitly or implicitly, and was capable of satisfying." *Puckett* does not stand for this proposition. The Commission read too much into the following statement in that case: "there is substantial evidence demonstrating that Puckett was indeed aware and warned of his employer's expectations." *Id*. While it may be good practice for an employer to communicate its expectations to its employees, it is not required to do so. We reiterate that the correct statement of law is that under the standards of behavior test, an employer's expectation is objectively reasonable when it is *either*: (a) communicated to the employee; *or* (b) flows naturally from the employment relationship. An expectation that flows naturally need not be communicated to an employee to be objectively reasonable. *Hiatt*, 166 Idaho at 291, 458 P.3d at 160.

7

With this clarification noted, we hold the Commission misapplied the standards of behavior test when it concluded that Evans Chiropractic failed to establish Shumway breached an expectation that had been communicated to her. The correct application of the standards of behavior test addresses "what the *employer* subjectively expected from the employee"—not the subjective expectations of the *employee*. *Adams*, 150 Idaho at 413, 247 P.3d at 640 (emphasis added). Here, the Commission incorrectly focused on Shumway's subjective reasons for not meeting with Hitchcock, rather than on Hitchcock's and Evans Chiropractic's expectations of Shumway. Therefore, the Commission misapplied the standards of behavior rule for misconduct.

2. *Some of the Commission's findings of fact are not supported by substantial evidence in the record.*

As we apply the facts to the appropriate law here, the Commission's conclusion that Evans Chiropractic failed to prove Shumway had been fired for job-related misconduct is not supported by substantial evidence in the record. The Commission found (1) that Shumway was reasonable in expecting that any meeting with Hitchcock would include a witness, (2) that Shumway was never warned her job might be in jeopardy if she failed to meet with Hitchcock, and (3) that criticism or concerns from Evans were addressed in a team meeting that allegedly took place on April 14, 2022.[3] As we discuss below, reasonable minds would not accept the evidence in the record to support the Commission's conclusions. *See Hartgrave v. City of Twin Falls*, 163 Idaho 347, 351, 413 P.3d 747, 751 (2018).

To start, nothing in the record suggests that Shumway asked Hitchcock or Evans if another employee or supervisor could be present at meetings involving her and Hitchcock. Shumway told Evans that she felt uncomfortable meeting with Hitchcock by herself, but this request came after the first meeting between Hitchcock and Shumway in which Hitchcock informed Shumway that they had to work together. Rather than ask for a witness to be present thereafter, Shumway's response was to repeatedly ignore Hitchcock and avoid meeting with him. As a result, there is no substantial support in the record for the Commission's finding that Shumway was reasonable in refusing to meet with Hitchcock unless such a meeting included a witness. Instead, the opposite was true. Shumway committed insubordination by repeatedly refusing to meet with Hitchcock.

---

[3] It appears no meeting occurred on April 14, as we discuss below, although there is no dispute that the concerns were addressed in a team meeting at some point.

8

The record likewise does not support the Commission's finding that Shumway was *never* warned that her job might be in jeopardy if she refused to meet with Hitchcock. The Commission wrote:

> As of April 14, 2022, Dr. [Hitchcock] had met with [Shumway] regarding the incident on March 16, 2022, and Dr. Evans had met with [Shumway] to discuss her interactions with another employee. In neither case was [Shumway] told her job was in jeopardy. In fact, Dr. Evans assured [Shumway] that her job was not in jeopardy.

The Commission's conclusion, however, is not supported by substantial and competent evidence. Hitchcock's and Shumway's testimony established that Shumway was put on notice that her continued refusal to meet with Hitchcock could adversely affect her employment. Hitchcock testified that, following that March 16 incident, he told her "we needed to work it out, because we were both going to work here for a long time and needed to figure out a way to work better together . . . ." According to Shumway's own testimony, Hitchcock told her, "[Y]ou are going to have to speak with me if you want to continue to work here" but, at that time, Shumway said she did not feel comfortable and left the room. The Commission disregarded this direct testimony, including Shumway's own statement, in concluding Shumway was *never* told her job might be in jeopardy and that she was never warned about her refusal to meet with Hitchcock.

Finally, the Commission relied on this Court's holding in *Oxley v. Medicine Rock Specialties, Inc.*, 139 Idaho 476, 80 P.3d 1077 (2003), in finding for Shumway. In *Oxley*, we held that an employer cannot discipline an employee (short of discharge) and then later discharge the employee for the past behavior unless the employer can show the employee engaged in the same behavior again. Applying this proposition, the Commission found that Shumway was part of a team meeting on April 14, 2022, at which Hitchcock addressed his concerns about the March 16 incident, and then fired Shumway for the same conduct right after the meeting.

There is no evidence that any group meeting took place on April 14 prior to Shumway's firing. Hitchcock testified about several group meetings but did not describe any meeting occurring on or around April 14. Shumway also described several group meetings, but not one on the date she was fired. Because there is no evidence in the record that a team meeting took place on April 14, 2022, the Commission's finding that such a meeting occurred is clearly erroneous.

In short, the Commission's conclusion that Evans Chiropractic failed to prove Shumway committed job-related misconduct is not supported by substantial evidence in the record.

*3. The Commission's factual findings support a different result: that Shumway's actions constitute misconduct under the standards of behavior test.*

As stated above, the test for misconduct in a standards of behavior case requires the Commission to determine both of the following: (1) the claimant's conduct fell below the standard of behavior expected by the employer; and (2) the employer's expectation was objectively reasonable. IDAPA 09.01.30.275.02.c.i–ii. Under the second prong of the test, an employer's expectation is objectively reasonable when it was either (a) communicated to the employee, or (b) was one that "flows naturally" from the employment relationship. *Hiatt*, 166 Idaho at 292, 458 P.3d at 161 (citing *Adams*, 150 Idaho at 413, 247 P.3d at 640). An expectation that "flows naturally" need not be communicated to an employee to be objectively reasonable. *Id.*

First, the Commission's "Findings of Fact" show that Shumway's conduct fell below the standard of behavior expected by Evans Chiropractic. Evans Chiropractic required Shumway to meet with Hitchcock, but Shumway refused to meet with him on several occasions. The Commission found that Shumway left the March 21 meeting with Hitchcock of her own volition, and that Shumway failed to meet with Hitchcock after his repeated messages asking to meet with her. Shumway's failure to meet with Hitchcock satisfies the first prong of misconduct because her conduct fell below the standard of behavior expected by her employer.

Second, the Commission's Findings of Fact show that Evans Chiropractic's expectation that Shumway meet with Hitchcock was objectively reasonable because that expectation was directly communicated to Shumway. Evans told Shumway that Hitchcock wanted to meet with her in advance of the March 21 meeting, but Shumway left that meeting. As indicated above, the Commission also found that Hitchcock sent Shumway Skype messages on April 4 and 13 asking her to meet with him. Evans' requests for Shumway to meet with Hitchcock were clearly communicated, which satisfies the second prong stated in *Adams* that the employer's expectation was objectively reasonable. 150 Idaho at 413–14, 247 P.3d at 640–41. Because these requests were directly communicated and disregarded, there is no need for this Court to consider whether any requests to meet with Shumway "flowed naturally" from the employment relationship. As a result, we hold as a matter of law that Shumway was discharged for employee misconduct, and she is ineligible for unemployment benefits.

IDOL argues that we must remand this case to the Commission to reapply the law to the facts set forth herein. We decline to do so because there is no reasonable dispute about the two

10

prongs of the standards of behavior test being met. We apply this Court's precedent from *Stark v. Assisted Living Concepts, Inc*, 152 Idaho 506, 510, 272 P.3d 478, 482 (2012), to reach this conclusion.

In *Stark*, the employer operated assisted living facilities, and the claimant was a residence director at one of the facilities. *Id*. at 507, 272 P.3d at 479. During a conversation with the employer's regional director of sales, Stark asked about a rumor that another facility was closing. *Id*. Soon after, the employer's CEO telephoned Stark and asked her about the source of the rumor. *Id*. The employer's CEO requested this information several times, but Stark felt uncomfortable giving the CEO the names of her co-workers who gave her that information and refused to say where she had heard the rumor. *Id*. Stark was eventually discharged because she refused to follow a direct order from the CEO. *Id*. at 508, 272 P.3d at 480.

The Commission found that Stark's refusal to name the source of the rumor did not constitute job-related misconduct and awarded benefits. *Id*. On appeal, this Court reversed the Commission's decision, holding that "[a]s a matter of law, Claimant's conduct constituted misconduct in connection with her employment under Idaho Code section 72-1366(5)." *Id*. at 510, 272 P.3d at 482.

Here, just as the employer in *Stark*, Hitchcock testified that he directly asked Shumway to meet with him several times. Shumway, by her own testimony, ignored his requests and refused to meet with Hitchcock, stating that she felt uncomfortable being alone with him. "The claimant's subjective state of mind is irrelevant." IDAPA 09.01.30.275.02.c. As we explained previously, the record on this point shows that Shumway violated a clearly communicated expectation that Shumway meet with the employer. Therefore, the Commission based its decision in this case on undisputed facts but reached an incorrect legal conclusion. We thus reverse its decision.

## B. We will not reach the additional grounds argued by IDOL and Evans Chiropractic to reach our decision.

Both parties argue additional grounds related to their respective positions. IDOL argues that if the case is remanded, this Court should make clear to the Commission that the "intentional disregard of the employer's interest" prong of misconduct does not require the employer prove that the employee acted with "premeditated malice." For its part, Evans Chiropractic argues that if Shumway's refusal to meet with Hitchcock is not misconduct, the Court should find that her allegedly deliberate failure to send appointment reminders to Hitchcock's patients constitutes an

alternate basis for misconduct. Having decided that this case does not require remand because Shumway's refusal to meet with Hitchcock constituted misconduct, we decline to address the other legal grounds asserted by Evans Chiropractic and IDOL in this matter.

## IV.   CONCLUSION

As a matter of law, Shumway's unemployment was because of her discharge for misconduct in connection with her employment and she is not entitled to benefits under Idaho Code section 72-1366(5). We reverse the order of the Industrial Commission.

JUSTICES BRODY, STEGNER, MOELLER, and ZAHN CONCUR.